489 P.2d 422

STATE of Utah, Plaintiff and Respondent,

v.

Robert Lon RICHARDS, Defendant and
Appellant.

No. 12323.

Supreme Court of Utah.

Oct. 5, 1971.

Hatch, McRae, Richardson & Kinghorn,
Salt Lake City, for defendant and appellant.

Vernon B. Romney, Atty. Gen., Lauren
N. Beasley, Chief Asst. Atty. Gen., Salt
Lake City, for plaintiff and respondent.

CALLISTER, Chief Justice:

Defendant appeals from his conviction,
upon a jury verdict, of the crime of burglary in the second degree. He asserts the
trial court erred in its denial of a motion to
suppress certain evidence which was obtained by a warrantless seizure and subsequent search of his truck by the police.

On the morning of December 18, 1969,
Officer Fife, a deputy sheriff, went to the
residence of defendant in Salt Lake City to
serve a warrant of arrest. Officer Fife
was accompanied by three other policemen.
Upon arrival at the location, Deputy Fife
observed a panel truck parked directly
across the street from the defendant's
home; he went over and looked through
the rear window of the vehicle and saw a

rifle, a television and two tool boxes. The police then proceeded to defendant's door and arrested him on the basis of the warrant.

Upon leaving the house, the police queried whether defendant owned the truck; he responded affirmatively, the officer announced he was impounding the truck as evidence. Defendant asked why, and the officer stated that he suspected that it had been used in another crime. The officer requested the keys; defendant claimed he didn't have them. The police conducted a search of defendant's person and located the keys in a watch pocket. The police gave defendant a choice of having the truck towed or permitting an officer to drive it. Defendant elected the latter choice.

The vehicle was driven to the tunnel by the main entrance of the jail. Five or ten minutes after arrival, the police opened the rear doors of the truck to inventory the contents; they immediately removed the inventoried items to the "evidence bag" of the sheriff's office.

The two tool boxes and the rifle were introduced in evidence in the instant action. Upon a hearing of the motion to suppress, Deputy Fife testified that at the time he removed the items from the truck and placed them in the evidence room, he had no knowledge either that the items were stolen or of the occurrence of the burglary that is the subject of the instant action. Officer Fife testified that he seized the truck because he believed that it was involved in another crime; he did not see anything in the vehicle which was involved in the crime for which defendant was arrested. He testified that his purpose in seizing the truck was for the vehicle itself, its identity, color, and type. He further testified that the police never made out an impound report on the vehicle or delivered it to the impound lot; the truck was released two days after seizure. The record further indicates that defendant was never near the vehicle at the time of arrest and that he never consented to its search.

The trial court ruled that the motion to suppress was denied on the ground that the car was seized because the officer thought it was involved in another offense, and the subsequent search was for inventory purposes and not to fasten upon the contents of the vehicle in connection with this offense.

In State v. Criscola,[1] this court formulated the following standard:

> The question to be answered is whether under the circumstances the search or seizure is one which fair-minded persons, knowing the facts, and giving due consideration to the rights and interests of the public, as well as to those of the

1. 21 Utah 2d 272, 274–275, 444 P.2d·517, 519 (1968).

suspect, would judge to be an unreasonable or oppressive intrusion against the latter's rights. * * *

The crucial issue of this case is whether there was a justification for this seizure of the truck as evidence of a crime in plain sight on a public street.

Defendant urges that at the time the police seized the truck and subsequently searched it, there was no probable cause to believe that the truck was evidence of a crime. Under such facts and circumstances this warrantless search and seizure was unreasonable and contravened the Fourth Amendment.

The State concedes that the seizure and subsequent search was not incidental to an arrest, but justified its action under Chambers v. Maroney.[2] In the Chambers case the court stated that where the search that produced the incriminating evidence was made at the police station some time after the arrest, it cannot be justified as a search incident to an arrest. The court cited the principle that once an accused is under arrest and in custody, then a search made at another place, without a warrant, is not incident to an arrest. The court observed that there were alternative grounds justifying the search in Chambers, namely, the police had probable cause to believe that the robbers, carrying guns and the fruits of the crime, had fled the scene in a light blue compact station wagon, which would be carrying four men, one wearing a green sweater and another wearing a trench coat. Under such circumstances, the police had probable cause to arrest the occupants of the station wagon that the officers stopped, and they had probable cause to search the car for guns and stolen money. The court stated:

> In enforcing the Fourth Amendment's prohibition against unreasonable searches and seizures, the Court has insisted upon probable cause as a minimum requirement for a reasonable search permitted by the Constitution. As a general rule, it has also required the judgment of a magistrate on the probable-cause issue and the issuance of a warrant before a search is made. Only in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search. Carroll, supra, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 453, holds a search warrant unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. Hence an immediate search is constitutionally permissible.[3]

The court concluded that based on the facts in Chambers, the vehicle could have

2. 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

3. 399 U.S. 51, 90 S.Ct. 1981.

been searched on the spot when it was stopped since there was probable cause to search, and it was a fleeting target for a search. The probable-cause factor and the mobility of the car still existed at the station house and therefore the warrantless search and seizure was not unreasonable.

In Coolidge v. New Hampshire,[4] the court observed that the doctrine of Chambers v. Maroney was applicable whenever the police would be justified in making a legal contemporaneous search at the time of arrest; they may also seize the car and take it to the police station and search it there. The underlying rationale of Chambers is that exigent circumstances justify a warrantless search of an automobile *stopped on the highway,* where there is probable cause, because the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. The opportunity to search is fleeting.

From the foregoing it is apparent that Chambers v. Maroney is not applicable in the instant case. In Coolidge v. New Hampshire,[5] the State sought to sustain the legality of a seizure and search of an automobile on the ground that the vehicle, itself, was evidence of a crime in plain view on the accused's property. Although members of the court expressed divergent opinions concerning the necessity of additional factors, the majority definitely affirmed the principle that the police must have probable cause to seize the vehicle. If the seizure be illegal, it is unnecessary to consider Cooper v. California,[6] wherein the court held that the reason for and nature of the custody of the vehicle by the police may constitutionally justify the search.

Justice White in his dissenting opinion in Coolidge v. New Hampshire,[7] cites two principles which are controlling in the instant action: First, under the Fourth Amendment, effects may not be seized without probable cause; second, a warrant is not needed to seize an automobile which is itself evidence of a crime and which is found on a public street.

In the instant action, the sole justification for the seizure was the expressed belief of Officer Fife that the truck was involved in another crime. The record is void of any facts or circumstances to support this belief and therefore will not presently support a finding of probable cause to seize the truck. The judgment of the trial court is reversed, and this cause is remanded for a new trial.

TUCKETT and HENRIOD, JJ., concur.

4. 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, 578–579 (1971).

5. Note 4, supra.

6. 386 U.S. 58, 61, 87 S.Ct. 788, 17 L.Ed. 2d 730, 733 (1967).

7. 90 S.Ct. 1975, at page 610 of 29 L.Ed.2d.

ELLETT, Justice (concurring) :

I concur, but only under the duress of the erroneous holdings of cases decided by the Supreme Court of the United States. In remanding this case for a new trial, we do so with certainty that a burglar will be set free to prey again upon a law-abiding society—a society which seems to have scarcely any rights at all under the Constitution as now interpreted.

Whether or not the police should have had a search warrant before entering the truck to check the serial number of the rifle has absolutely nothing to do with the guilt or innocence of the appellant. There is no question whatsoever of his guilt. His fingerprints were found in the burglarized home, and the stolen rifle and tool box taken therefrom were locked in his truck. The appellant did not testify at his trial, and so the jury could hardly fail to declare that he was guilty of burglary under the facts as given to it.

This case is being reversed because the court allowed testimony concerning the stolen goods to be presented to the jury. In other words, the police officers had a rifle and tool box which were stolen in connection with a burglary, but under the holdings of the Great Court those officers could not say where they got them or even place them in evidence.

If the Great Court had not officiously and improperly arrogated unto itself the power to have its inferior courts supervise all state supreme courts, I would uphold the conviction in this case.

The weak crutch upon which the Great Court leans in its grab for powers which rightfully belong to the state courts is the language of the Fourteenth Amendment to the Federal Constitution.[1] By some sophistry not understood by the framers of that Amendment nor by the judges of all courts for nearly a century after it was declared adopted, the Great Court now says that the prohibitions against the federal entity as contained in the first eight amendments to the Constitution are now applicable to the various states composing the nation. The clause "nor shall any State deprive any person of life, liberty, or property, without due process of law," as written in the so-called Fourteenth Amendment, now means, according to the Great Court, that each prohibition mentioned in the first eight amendments as limitations on the federal powers is likewise a limitation on each and every state of the union simply because it is included in the term "due process of law."

Had the members of the Great Court read the first eight amendments carefully, they would have convinced themselves that *due process of law* meant something entire-

---

1. As to the efficacy of that amendment, see my lonesome opinion in Dyett v. Turner, 20 Utah 2d 403, 439 P.2d 266 (1968).

ly different from what they now say it means. All of the prohibitions against federal abuses are clearly set out in those eight amendments, and then in addition to those prohibitions, the Fifth Amendment contains the following clause: "No person shall be * * * deprived of life, liberty, or property, without *due process of law.*" (Emphasis added.)

If *due process* meant what the Great Court now says it means, then why was it necessary to include the specific limitations on federal powers as contained in the first eight amendments? Why did not those amendments simply say, "No person shall be * * * deprived of life, liberty, or property, without due process of law," and leave it to the courts to prevent searches without warrants; to prevent an officer from questioning a suspected felon; to compel speedy trials; to require counsel for all persons accused of crime; etc.?

The reason is obvious. *Due process* does not mean at all what the Great Court now says it means. The term is defined in 16 Am.Jur.2d, Constitutional Law, § 546, as follows:

* * * It has been said that due process of law must be understood to mean law in the regular course of administration through courts of justice according to those rules and forms which have been established for the protection of private rights. * * * A general

law administered in its legal course according to the form of procedure suitable and proper to the nature of the case, conformable to the fundamental rules of right and affecting all persons alike, is due process of law.

In the instant case the officer was not searching for anything. The objects were in plain view. The officer only needed a closer look to check the serial number on the rifle. It may be that he did wrong in taking the truck to the station and there getting inside of it. If he thereby committed a trespass, the courts are open to the appellant to recover such damages as he may have sustained.

There is no provision of statute or constitution which would prevent the truth from being told to a jury simply because the officer may have been overzealous in securing incriminating evidence against a criminal. It is only prevented by some poorly reasoned federal cases. Such a holding as we here and now make is difficult for the law-abiding people of this nation to understand. Our courts now have less respect than they have had since the union was formed. The blame is not confined to those courts which deserve it. The state courts, like "old Dog Tray," are taking a beating—not because of anything which we do, but rather like "old Dog Tray" because of the company we keep. Of necessity we must keep company with the federal courts. However, we would

like to be able to cite some of the decisions of the Great Court for a principle of law other than as a means of setting free a convicted felon.

The prevailing opinion cites the case of Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, 578–579 (1971), and that case is to be commended for showing an awareness on the part of some members of the Great Court of the error of their ways and of the mischief which they have wreaked by their poor decisions.

While our citizens are not safe either in their homes or on the streets of our cities, still the great concern of the Supreme Court of the United States seems to be for the criminal and his so-called constitutional rights rather than for the overridding problem of the protection of the innocent element of our society or the conviction of criminals pursuant to due process of law as administered by the state courts.

CROCKETT, Justice (dissenting):

I dissent.

I do not desire to burden this case and the books with any extensive repetition of my views as to the "unreasonableness" of requiring peace officers to go and obtain a warrant to conduct a "search" and then to "find" property already in their possession; and this upon what I believe was an entirely reasonable suspicion of being impli-

cated in crime, which it is their duty to investigate. The problem was dealt with in the case of State v. Criscola, footnote 1, main opinion. Upon the basis of that decision and the authorities therein cited, including particularly Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067, I think the question accurately and pertinently quoted, as to whether there was an unreasonable search, should be answered in the negative. This is especially so because the determination as to the reasonableness of the search is primarily for the trial judge, which should not be disturbed unless it clearly appears that he was in error or abused his discretion, a circumstance not shown here.