513 P.2d 435

The STATE of Utah, Plaintiff and Respondent,

v.

David KAAE et al., Defendants and Appellants.

No. 12904.

Supreme Court of Utah.

Aug. 13, 1973.

A. W. Lauritzen, Logan, for defendants and appellants.

Vernon B. Romney, Atty. Gen., David S. Young, William T. Evans, Asst. Attys. Gen., Salt Lake City, for plaintiff and respondent.

CROCKETT, Justice:

The defendants, David Kaae, Keith Ewer and Michael Horne, were each charged with second-degree burglary and grand larceny in connection with a break-in and theft of merchandise at "Keith's Market" in Logan, Utah, on August 31, 1971. Prior to trial, the defendants moved to suppress certain evidence seized by the Logan police, and the statements they made to the police about it, on the ground that their constitutional rights had been violated. The trial court denied the motions. Thereafter, Keith Ewer pled guilty to the charge of grand larceny and the second-degree burglary charge was dropped as to him. Defendants Kaae and Horne agreed to submit their cases to the court on stipulated evidence, and were found guilty on both counts.

Defendants appeal, challenging the denial of their motions to suppress, stating two points: that the evidence was taken by an illegal search;[1] and that inasmuch as their confessions arose out of the claimed illegal search, they should be deemed involuntary and inadmissible.[2]

On the morning of August 31, 1971, Keith Plowman discovered that during the night the front door of his store had been broken into and that various merchandise was missing, including cigarettes, beer, toilet articles, razor blades, pencils and glue, valued in excess of $50. Three days later (September 3, 1971), Leon Wursten and Richard Wright, Logan police officers, acting on an informant's tip, went to the apartment rented and occupied by the defendant David Kaae. When they knocked

1. Art. I, Sec. 14, Utah Const.; Amendment IV, U.S.Const.

2. Art. I, Sec. 12, Utah Const.; Amendment V, U.S.Const.

at the door they were admitted by defendant Keith Ewer. They informed him they were police officers and that they would like to talk with David Kaae. A number of young people were in the apartment.

Defendant Ewer took the officers to David Kaae, who was in the kitchen sitting beside a table. The officers noticed items lying on the kitchen table the same as some of the merchandise taken from "Keith's Market." Officer Wursten then told David Kaae that they were aware of what was going on, and asked him if he wanted to show them where the rest of the stolen merchandise was. The officer's testimony was that defendant Kaae unhesitatingly and willingly agreed:

He took us around and showed where the different things were. He was pulling things out of the cabinets and taking the contraband out of the cabinets and starting to stack it up on the kitchen counter.

The officers then arrested Kaae and gave him the "Miranda warning"; and took possession of the stolen merchandise. Defendant Kaae subsequently gave a written statement as to his part in the burglary. Ewer and Horne were arrested at a later time and also gave written statements as to their parts in the burglary.

In regard to his view of the evidence and his ruling upon the motion to suppress, the trial court stated in part:

But I think . . . that there was a consent and in fact an assistance in accomplishing the turning up of other evidence in the house, and on that basis I would deny the motion to suppress the evidence . . . ..

In considering the defendant's challenge to the view thus expressed, and the ruling made by the trial court, there are some principles to be had in mind. The constitutional safeguard against searches and seizures arose in order to protect the citizenry from highhanded and despotic intrusions into their privacy. When this charge is made the inquiry should be whether under the circumstances the seizure is one which fair-minded persons, taking into consideration not only the rights of the individuals affected by the search, but also the interests of the public in being protected from crime and criminals, would regard it as being unreasonable.[3]

Inherent in the nature of the judge's role in charge of the trial is the necessity that he have the prerogative of making preliminary determinations upon questions of fact upon which the admissibility of evidence depends. In reviewing

3. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777; Cooper v. Calif., 386 U.S. 58, 87 S.Ct. 788, 17 L. Ed.2d 730; State v. Criscola, 21 Utah 2d 272, 444 P.2d 517.

his rulings we assume that he believed those aspects of the evidence, and drew the inferences that could reasonably be drawn therefrom which support his conclusions.[4]

■ Applying what has been said above, it appears that the trial court could reasonably have regarded the evidence as showing: that the officers were admitted to the apartment, and did what they did therein, by consent;[5] that they had knowledge that a felony had been committed, and that there was reasonable cause to believe that it had been committed by the defendant David Kaae. There was, therefore, justification for his arrest;[6] and under the well-recognized "plain sight" doctrine, there was justification for taking the incriminating evidence.[7] We have perceived nothing to persuade us to upset the ruling of the trial court that the evidence was lawfully seized.

■ The second point argued by defendants is that their confessions arose out of the claimed illegal search and seizure and were therefore like unto the "fruit of a poison tree" and were not properly admissible in evidence.[8] Two observations are pertinent. First, the finding that there was no illegal search or arrest eliminates any "poison tree" upon which to predicate this aspect of their argument. Second, and more fundamental: the test as to the admissibility of a confession is whether under all of the circumstances shown it appears to have been voluntary.[9] There is substantial and reasonable basis in the evidence to support the trial court's refusal to find otherwise as contended by the defendants.

The convictions are each affirmed. No costs awarded.

CALLISTER, C. J., and HENRIOD and TUCKETT, JJ., concur.

ELLETT, Justice (concurring).

I concur but do not wish to be understood as believing that the defendants had any rights under the first eight amend-

---

4. See Ker v. Calif., 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726; State v. Richards, 26 Utah 2d 318, 489 P.2d 422.

5. State v. Tuttle, 16 Utah 2d 288, 399 P. 2d 580; State v. Sherrick, 98 Ariz. 46, 402 P.2d 1; and cf. Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L. Ed. 436; People v. Duren, 9 Cal.3d 218, 107 Cal.Rptr. 157, 507 P.2d 1365.

6. Sec. 77-13-3, U.C.A.1953, states: ". . . A peace officer may . . . without a warrant, arrest a person:

. . . (4) When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it."

7. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1960); State v. Eastmond, 28 Utah 2d 129, 499 P.2d 276.

8. Citing Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.

9. State v. Ringo, 14 Utah 2d 79, 377 P.2d 646.

ments to the Federal Constitution. Those amendments were adopted solely as limitations on the newly created Federal Entity and were not applicable to the sovereign states; nor did the Fourteenth Amendment change that relationship in any manner whatsoever.[1]

---

1. See cases cited in the annotation in 19 A.L.R. at pages 644–646; see also Dyett v. Turner, 20 Utah 2d 403, 439 P.2d 266 (1968).