514 P.2d 537

**STATE of Utah, Plaintiff and Respondent,**

v.

**Richard Eudore BRAY, Defendant and Appellant.**

No. 13283.

Supreme Court of Utah.

Sept. 28, 1973.

Dexter L. Anderson, Fillmore, for defendant-appellant.

Vernon B. Romney, Atty. Gen., David L. Wilkinson, William T. Evans, Asst. Attys. Gen., Salt Lake City, for plaintiff-respondent.

CROCKETT, Justice:

Richard Eudore Bray seeks reversal of his conviction by a jury of second-degree burglary. His contention is that there was no proper basis for his arrest, which made it unlawful, and that therefore evidence taken by the police officer in connection therewith was unlawfully seized and should not have been admitted in evidence.

During the night of June 4–5, 1972, the Pexton Wholesale Supply warehouse in Nephi was broken into and some cash and merchandise taken. About 6 a. m. an employee so discovered and telephone calls were made to the company's president, Harlow Pexton, the sheriff's office and the highway patrol. Highway Patrolman Joseph D. Benson, acting on information that suspicious acting persons were about the Shamrock Service Station in the town of Beaver, went there to investigate. He observed a man (later identified as Earl Anderson) who seemed to be trying to hide from him by going behind a car and around a building. In Anderson's car he noticed another man (defendant Bray) asleep on the front seat. He asked these men to get into his patrol car and answer some questions. He radioed an NCIC

check (National Crime Information Center) which revealed nothing as to the defendant.

During this time two juveniles, Douglas Pexton and Robert McMurray, had come into the service station. After receiving information that Pexton and Anderson were AWOL juveniles, and were suspects in the burglary at Nephi, Officer Benson asked the defendant and Anderson if they knew the just named juveniles, which they denied. Whereas, the juveniles in the station said that the four of them had been traveling together in the car. Upon the basis of the information thus furnished, and the obvious lying to the officer, he told all four boys that they were under arrest.

Upon his own initiative and before anything further was said by the officer, Anderson went to his car and took a First Security money bag from under the front seat and handed it to the officer saying: "You probably want this." Then the three boys began to voluntarily move from the car a number of items which, it is not disputed, had been stolen from Pexton's, and which included the First Security money bag containing $1,225; certain articles identified as belonging to James Pexton, and which had last been seen in the Pexton warehouse, including: his wallet containing his credit cards and family pictures; his

watch; his checkbook; a .38 caliber revolver; two watches; and a satchel case with four bottles of liquor.

In considering the defendant's contention that the evidence above listed was taken in an unlawful search and seizure it is important to have in mind that what is proscribed is an "unreasonable" search and seizure.[1] The only thing this writer can see unreasonable in this situation is that the constitutional protections in our law have become so distorted and so far removed from their reasons for being, that it is possible for a man in his right mind and with a straight face to urge that this is such an unreasonable search; and upon that predicate to argue that all of the proceedings and a jury verdict should be nullified.

This is a case where a felony had in fact been committed, where there was sufficient reason to suspect that the defendant was implicated therein; and there was therefore a justifiable basis to place him and the others under arrest; and the participants themselves voluntarily took the evidence from the car and turned it over to the officer. Under such circumstances to postulate that it was necessary or advisable to obtain a search warrant, we cannot see as anything other than an exercise in futility. This is said in full appreciation of and desire to carefully safeguard the rights of all

1. Art. I, Sec. 14, Utah Const.; Amendment IV, U.S.Const.

**124**

citizens from anything that might even approach oppressive or unreasonable intrusions upon their constitutional rights.

We have but recently had occasion to consider similar contentions, that evidence obtained in connection with apprehending persons suspected of crime was unlawfully seized and therefore too tainted to be used as evidence; and have stated our views: That such contentions are unsound unless there is some basis upon which it can be said that the seizure was in fact unreasonable, having due regard for the rights of the accused and the protection of the interests of the public in investigating crime; [2] and that greater liberality is indulged with respect to mobile things such as automobiles than as to homes or buildings.[3] A case so similar on its facts that it is not distinguishable in principle is that of State v. Eastmond[4] which we refer to as controlling here.

There are some further, perhaps unnecessary, but valid, observations to be made here. The real objective in criminal proceedings, of seeking out the truth and doing justice, is too often lost sight of because of technical rulings, which are extrapolated in hypertechnical effect into situations where they should have no application; and the spurious notion has arisen that anyone, however evident his guilt, is entitled to counsel on appeal and a review of his conviction no matter how meritless the appeal may be.[5]

At the trial Douglas Pexton testified as to defendant Bray's participation in the burglary; and Mrs. Delia Anderson testified that Bary had himself similarly told her and her husband about it. From this and other evidence the defendant's guilt appears to be so certain that, even without the physical evidence, there could be no reasonable doubt. Wherefore, even if admitting the evidence in question should be deemed error, that would not justify reversal of his conviction.[6]

Affirmed. No costs awarded.

CALLISTER, C. J., and HENRIOD, ELLETT and TUCKETT, JJ., concur.

2. State v. Kaae, 30 Utah 2d 73, 513 P.2d 435 (1973); State v. Criscola, 21 Utah 2d 272, 444 P.2d 517 (1968); Cooper v. Calif., 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730; Stacey v. Emery, 97 U.S. 642, 24 L.Ed. 1035; Moore v. People, 171 Colo. 338, 467 P.2d 50 (1970).

3. See Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419.

4. 28 Utah 2d 129, 499 P.2d 276.

5. Cf. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1966).

6. Our statute Sec. 77-42-1 provides that errors which *do not affect the essential rights of the parties* be disregarded; see State v. Scandrett, 24 Utah 2d 202, 468 P.2d 639; and Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284, to the effect that *if it appears beyond a reasonable doubt that the error was not prejudicial, the conviction should not be reversed.*