**The STATE of Utah, Plaintiff and Respondent,**

v.

**Willie FOLKES, Defendant and Appellant.**

**No. 14330.**

Supreme Court of Utah.

June 15, 1977.

Jack W. Kunkler and Ronald J. Yengich of Salt Lake Legal Defender Assn., Salt Lake City, for defendant and appellant.

Vernon B. Romney, Atty. Gen., William W. Barrett, Asst. Atty. Gen., R. Paul Van-Dam, Salt Lake County Atty., Salt Lake City, for plaintiff and respondent.

CROCKETT, Justice:

Defendant Willie Folkes appeals from a conviction by a jury of the crime of unlawful possession of a controlled substance (heroin) with intent to distribute it for val-ue.[1] In seeking reversal, he contends that he was convicted because of unlawfully obtained evidence in that (1), the surveillance by the police, which resulted in his warrantless arrest, was an unconstitutional invasion of his privacy; and (2), that the search and seizure of a bottle containing capsules of heroin was not justified as being incident to his arrest.

On May 26, 1974, at approximately 2:00 a. m. S.L.C. police officers D. B. Bell and Niels Niemann were, with the consent of the owners, stationed on the roof of the Rio Grande Products Building, near Fifth West and Second South in Salt Lake City for the purpose of observing prostitution activity on the street below. While walking along a ledge on the side of that building, Officer Bell overheard voices coming from a room on the second floor of the adjacent Bay-wood Hotel. After hearing talk about heroin and "shooting up" and twice seeing a hand holding a syringe reach from the kitchen window of that room and squirt a clear substance into the alley, Officer Bell signaled to Officer Niemann to join him.

They sat on the ledge, each positioned on one side of the kitchen window to watch the goings on inside. Officer Bell saw the defendant, Folkes, go into the bedroom, return with an amber-colored bottle, and take two gelatin capsules from it, which he handed to one of two women. The latter placed the contents of the capsules in a spoon, added water, heated it and then each used a syringe to inject the substance into the other's arm.

The officers continued watching and a little later saw a similar performance between the defendant and a man customer, one James Lee. He likewise injected the contents of a capsule obtained from the amber bottle into his arm; and defendant again replaced the bottle on top of the dresser in the adjoining bedroom. It was at this time, after the officers had been making their observations for about two hours, that Officer Niemann accidently made a noise which drew the attention of the de-

---

1. 58–37–8(1)(a)(ii), U.C.A. 1953.

fendant. The defendant opened the bedroom window to investigate the noise.

At that time, Officer Neimann identified himself and, with his revolver drawn, entered the apartment through the bedroom window, the defendant retreating back into the kitchen as he did so. While Officer Niemann detained the defendant and Mr. Lee in the kitchen, Officer Bell entered through the bedroom window and joined him in the kitchen. Officer Niemann arrested the defendant, handcuffed him and stepped into the bedroom and took the bottle from the top of the dresser containing the capsules of what was later determined to be heroin.

■ We are committed unreservedly to the protection of the right of privacy by guarding against any unwarranted intrusions upon the peace and dignity of persons in their homes, hotel rooms or wherever they are lawfully entitled to be in private.[2] There can be no doubt but that officers should not take it upon themselves to decide whether to enter such a sanctuary without a warrant when it is reasonably practical to obtain one. But the proper safeguarding of that important right is one thing, while it is quite another to attempt to distort it for the purpose of providing a cloak of secrecy for clandestine criminal activities. The other side of the coin is that it is also essential that law officers should have reasonable liberty to investigate crimes without undue impediment or restriction.[3]

■ It is to be borne in mind that it is not all searches and seizures without a warrant which are proscribed by the constitutional provisions referred to. It is only of a search which is "unreasonable."[4] It is commonly and properly stated that the question as to whether a search is unreasonable depends upon the particular circumstances; and the question to be answered is whether reasonable and fair minded persons would judge the alleged search or seizure to be unreasonable or oppressive.[5]

In addressing that question in this case, it is also appropriate to have in mind that dealing in narcotic drugs is of such a nature that those who engage therein devise many and devious ways of concealment and quick disposal. Therefore what is reasonable about getting a warrant to search for other property and in other circumstances is not necessarily a guide to what is reasonable in searching out and apprehending the trafficking in such drugs.

■ It is true that the officers here were investigating other criminal activity. But they are charged generally with the duty of searching out any crime, obtaining evidence and prosecuting those engaged therein. When a police officer sees or hears conduct which gives rise to suspicion of crime, he has not only the right but the duty to make observations and investigations to determine whether the law is being violated; and if so, to take such measures as are necessary in the enforcement of the law.

■ The officers were where they had a right to be.[6] Without any intrusion upon the defendant, their attention was arrested by activities which indicated quite unmistakably that he was committing a felony. Therefore they could arrest him without a warrant;[7] and they could take anything in the immediate area which was so involved in the criminal conduct that it would serve

**2.** This right derives from the protections of Section 14, Article I of the Constitution of Utah and of Amd't IV of the Constitution of the United States which in identical language provide that "The right of the people to be secure in their persons, houses . . . against *unreasonable* searches and seizures shall not be violated . . . ."; see *State v. Kent*, 20 Utah 2d 1, 432 P.2d 64 (1967).

**3.** *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Kent, supra*, note 1.

**4.** See *Preston v. U.S.*, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); *State v. Richards*, 26 Utah 2d 318, 489 P.2d 422 (1971).

**5.** Ibid. See also *State v. Criscola*, 21 Utah 2d 272, 444 P.2d 517 (1968).

**6.** *Goldman v. U.S.*, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322 (1942).

**7.** 77–13–3, U.C.A. 1953.

**1128**

as evidence in proof of the crime.[8] Though the bottle from which the narcotic had been taken was placed on the dresser in the adjoining bedroom, it was in the immediate vicinity; and it was in plain view in that no search was required to discover it.[9] In fact the charge that there was a "search" in this case is for that reason a distortion of language, because there was really no "search" involved.

One particularized aspect of defendant's contention deserves notice. He makes what to him seems a plausible argument, but to us a specious one: that it was Officer Bell who had been so positioned that he could see the bottle on the dresser which contained the heroin, but it was Officer Niemann who stepped into the bedroom and took the bottle.

It is our opinion that if a fair and realistic view is taken of the evidence, and the reasonable inferences drawn therefrom, in the light favorable to the rulings of the trial court and the verdict of the jury, there is ample justification for Officer Niemann believing that the bottle contained narcotic drugs which the defendant was using in connection with the commission of a felony; and that under the tests referred to in this opinion the trial court was correct in its ruling that there had been no unreasonable search and in refusing to suppress the evidence.[10]

Affirmed. No costs awarded.

ELLETT, C. J., and WILKINS and HALL, JJ., concur.

MAUGHAN, J., concurs in result.

---

**8.** *State v. Eastmond,* 28 Utah 2d 129, 499 P.2d 276 (1972).

**9.** *Harris v. U.S.,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1960); *State v. Kaae,* 30 Utah 2d 73, 513 P.2d 435 (1973).

**10.** See *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *State v.. Lopes,* Utah, 552 P.2d 120 (1976).