STATE of Utah, Plaintiff and Respondent,

v.

Robert Kirk ECHEVARRIETA, Defendant and Appellant.

No. 16914.

Supreme Court of Utah.

Dec. 4, 1980.

---

Robert J. Schumacher of Utah County, Legal Defenders Ass'n, Provo, for defendant and appellant.

Robert B. Hansen, Atty. Gen., Olga Agnello-Raspa, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

1. A Schedule I controlled substance, in violation of U.C.A., 1953, 58–37–8(1)(a)(i).

**HALL, Justice:**

Defendant appeals his conviction by a jury of the crime of production of marijuana.[1]

Defendant was caring for the house and yard of his brother who was absent from said premises, which are located in Santaquin, Utah. A city water meter reader, Walter Smith, came upon the premises and incident to his search for the meter, observed two flower pots in the living room window, each containing single plants; a large metal washtub near the kitchen door containing several plants; and two white five-gallon plastic buckets in the backyard, each containing two to four plants. Smith recognized the plants as being marijuana from a college course he had taken in law enforcement and promptly advised Santaquin City Marshal, Gary McGiven, of his discovery. McGiven went directly to the premises, walked up the driveway, found no one present, but did also observe the marijuana plants growing in the containers. McGiven then withdrew from the premises, but kept them under surveillance until defendant was observed to come out of the house and water the plants in the two buckets. Thereupon, defendant was arrested and the plants confiscated as evidence.

Defendant's contentions on appeal are: (1) that the marshal's initial entry upon the premises constituted an unconstitutional search, hence the trial court erred in refusing to suppress the evidence obtained thereby; (2) that in any event, it was error not to suppress all evidence of marijuana other than that contained in the two buckets defendant was watering; (3) that it was error not to instruct that possession of marijuana was a lesser and included offense; (4) that it was error not to instruct that intent to distribute was an essential element of the offense charged; and (5) that the evidence generally was insufficient to convict.

To "search" is to look into or over carefully and thoroughly in an effort to find or discover.[2] Hardly can it be said

2. Webster's Third New International Dictionary (Merriam-Webster, 1961).

that Marshal McGiven's presence on the premises in any way constituted a constitutionally prohibited search. He simply observed, in plain sight, without an illegal search, that which Smith had already found and discovered.[3] Marshal McGiven's entry upon the driveway of the premises was therefore lawful, having been prompted by reliable information that a felony was in progress.[4] At that point in time, all that remained to be discovered was the perpetrator of the crime. Consequently, the officer withdrew from the premises and bided his time until the defendant appeared on the scene and proceeded to "tend" the marijuana plants. Such conduct on the part of the defendant constituted the commission of a public offense in the presence of the marshal, and his subsequent arrest was therefore lawful,[5] as was the confiscation of the contraband plants incident to the arrest.[6]

Defendant argues that he had a "reasonable expectation of privacy" and cites *Katz v. United States*[7] in support of his position. However, as Justice Harlan points out in concurring with the majority of the court:

> Thus a man's home is, for most purposes, a place where he expects privacy, but objects, activities, or statements that he exposes to the "plain view" of outsiders are not "protected" because no intention to keep them to himself has been exhibited.

In the instant case, the fact that the marijuana plants were placed in "plain view" dispels any notion of an intention to keep them "protected" from the view of outsiders.

Defendant also cites *Lorenzana v. Superior Court of Los Angeles County*[8] as authority for his position. However, the court specifically distinguished the facts encountered therein (they being the peering through a narrow crack in the window curtains of the accused's house in order to view the sale of drugs in progress) from those cases in which evidence is observed from a position where the observer has a legal right to be. The court's reasoning was that:

> . . . A sidewalk, pathway, common entrance or similar passageway offers an implied permission to the public to enter which necessarily negates any reasonable expectancy of privacy in regard to observations made there.

\* \* \* \* \* \*

> . . . [O]bservations of things in plain sight made from a place where a police officer has a right to be do not amount to a search in the constitutional sense.

In the case before us, the marshal was afforded an implicit invitation to enter upon the premises via the driveway and from his vantage point thereon, he observed the growing marijuana plants. The fact that the plants were in plain sight demonstrates the lack of any reasonable expectation of privacy.[9]

Defendant next contends that the trial court erred in not excluding the evidence pertaining to all marijuana plants other than the two he was observed watering. Admission of the evidence is supported by the doctrine of constructive possession. The following statement of the

---

3. That the observations of an officer in plain view from a vantage point he has a legal right to occupy does not constitute a search, see *State v. Folkes*, Utah, 565 P.2d 1125 (1977), and cases cited therein.

4. That a peace officer may arrest without a warrant for a public offense committed in his presence or when a felony has in fact been committed, see U.C.A., 1953, 77–13–3(1) and (4).

5. U.C.A., 1953, 77–13–3(1), supra, footnote 4.

6. *State v. Folkes*, supra, footnote 3.

7. 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

8. 108 Cal.Rptr. 585, 511 P.2d 33 (1973).

9. See *State v. Wettstein*, 28 Utah 2d 295, 501 P.2d 1084 (1972), citing *People v. Bradley*, 81 Cal.Rptr. 457, 460 P.2d 129 (1969).

court in *State v. Floyd*[10] is particularly apropos:

> Constructive possession is generally applied to those circumstances where the drug is not found on the person of the defendant nor in his presence, but is found in a place under his dominion and control and under circumstances which it can be reasonably inferred that the defendant had actual knowledge of the existence of the narcotics. Exclusive control of the place in which the narcotics are found is not necessary.

The fact that defendant was in control of the premises, was aware of the existence of the plants, had access thereto, and in fact watered some of them, sufficiently establishes his constructive possession thereof. The plants were sufficiently identified visually and chemically, by qualified experts. Hence, evidence as to all of the plants was admissible.

Even assuming, *arguendo*, that the evidence was erroneously admitted, under the facts of this case it is not within our contemplation that a contrary verdict would have been reached in the absence of such evidence.[11]

■ Defendant's next contention, that simple possession of marijuana [12] is a lesser offense included within the offense charged, is deemed to be without merit. A greater offense includes a lesser one only when establishment of the greater necessarily requires proof of all the elements necessary to prove the lesser.[13]

■ The essential elements of the offense of production of a controlled substance, as charged in the instant case, are simply that the substance in fact be produced, knowingly and intentionally.[14] Posses-

sion is clearly not an element of the offense, whereas possession is the very gravamen of the offense of simple possession of a controlled substance. It is immaterial whether defendant was in possession of the plants, since by tending them he contributed to their growth, and was thus producing them.

In light of the foregoing analysis, defendant's further contention that "intent to distribute" is an essential element of the offense charged is also without merit as is his final contention, that of insufficiency of the evidence generally to justify a conviction.

The conviction and judgment of the trial court is affirmed.

CROCKETT, C. J., concurs.

STEWART, J., concurs in the result.

WILKINS, Justice (dissenting):

Once again a majority of this Court, I respectfully submit, declines to apply the law of search and seizure as laid down by the United States Supreme Court.

Defendant argues that the search by Officer McGiven on October 9 violated his legitimate expectation of privacy in the backyard of the residence, and was therefore illegal.[1] The plurality opinion responds that the officer made his observation from a place where he had a right to be—a driveway serving the residence—and since the plants were plainly visible from that vantage point, defendant could not entertain any such expectation of privacy.

The starting point for the analysis of a search is the proposition that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifi-

---

10. 120 Ariz. 358, 586 P.2d 203 (1978), quoting *State v. Villavicencio*, 108 Ariz. 518, 502 P.2d 1337 (1972).

11. That the trial court has considerable discretion as to the admissibility of evidence and that the erroneous admission of evidence, standing alone, is insufficient to set aside a verdict unless it "had a substantial influence in bringing about the verdict," see *Bambrough v. Bethers*, Utah, 552 P.2d 1286 (1976).

12. U.C.A., 1953, 58–37–8(2)(a)(i).

13. *State v. Brennan*, 13 Utah 2d 195, 371 P.2d 27 (1962).

14. See statute, supra, footnote 1.

1. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

cally established and well-delineated exceptions."[2] The only possible exception to the search warrant requirement present here is the "plain view" exception.[3]

The "plain view" exception was exhaustively examined and explained in *Coolidge v. New Hampshire*.[4] There the Supreme Court stated:

What the "plain view" cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came *inadvertently* across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification—whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, *or some other legitimate reason for being present unconnected with a search directed against the accused*—and permits the warrantless seizure. Of course, the extension of the original justification is legitimate only when it is immediately apparent to the police that they have evidence before them; the "plain view" doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges.[5] (Emphasis added.)

Here, Officer McGiven's initial intrusion on the property was for the express purpose of searching for the marijuana plants which Mr. Smith had told McGiven were there. Thus, while it is true that the driveway by which McGiven entered the property may have afforded an implied invitation to the public to enter the property, that invitation cannot be constitutionally extended to encourage entrance by a police officer onto the property, without a warrant, for the purpose of searching for evidence about which he received prior information. McGiven's observation of the plants was not inadvertent in that he did not have "some other legitimate reason for being present unconnected with a search directed against the accused."

The necessary consequence of the illegal search here is the exclusion as evidence of all fruits of that search.[6] This would include all of the plants and the containers holding them, photographs of the plants, the results of any chemical analysis of the plants, and all testimony of Officer McGiven relating to his initial observation of the plants and his subsequent surveillance of the premises.

Turning now to the seizure of the plants on October 12, that seizure also violated the Fourth Amendment. As was noted, *ante*, the plants and their containers were seized immediately following the arrest of defendant. The plurality opinion seeks to justify the seizure as one incident to a lawful arrest. The State goes to great length in its brief to show probable cause for the arrest of defendant. However, the existence of probable cause to arrest, in and of itself, does not legitimate a warrantless search, for as the Supreme Court pointed out in *Coolidge, supra*:

[N]o amount of probable cause can justify a warrantless search or seizure absent "exigent circumstances."[7]

The conclusion that the seizure was incident to arrest flies in the face of United

---

2. *Id.*, at 357, 88 S.Ct. at 514 (footnotes omitted).

3. This exception was first formally enunciated in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (see Note, *The Plain View Doctrine in Nebraska*, 57 Neb. L.Rev. 209 (1978) at n. 3). The other exceptions include (1) searches incident to arrest, *Agnello v. United States*, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925); (2) automobile exception, *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); (3) hot pursuit, *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); (4) emergency situations, *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); (5)

consent, *Zap v. United States*, 328 U.S. 624, 66 S.Ct. 1277, 90 L.Ed. 1477 (1946) (see, Williamson, *The Supreme Court, Warrantless Searches, and Exigent Circumstances*, 31 Okla. L.Rev. 110 (1978) at n. 5).

4. 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

5. *Id.*, at 466, 91 S.Ct. at 2038.

6. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

7. 403 U.S. at 468, 91 S.Ct. at 2039.

States Supreme Court decisions defining the limits of that exception to the warrant requirement. In *Chimel v. California*,[8] the Court stated:

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or to effect his escape ... In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule ... There is ample justification, therefore, for a search of the arrestee's person and the area "within his immediate control"—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.[9]

The record here reflects that defendant was arrested while standing near his automobile in the driveway to the house. There is no indication that he made any move toward any of the plants. The plants were not on his person, nor within his "immediate control" as that term is defined for purposes of the "incident to arrest" exception to the warrant requirement. Therefore the seizure of the plants was constitutionally infirm, and the fruits of that seizure inadmissible.

As the evidence supplied by the illegal search and seizure described above is constitutionally inadmissible, it is clear that there was insufficient evidence here to convict defendant of the crime of production of a controlled substance. I would therefore reverse the District Court and remand for entry of judgment of not guilty.[10]

MAUGHAN, J., concurs in the dissenting opinion of WILKINS, J.

8. 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

9. *Id.*, at 762–763, 89 S.Ct. at 2039–2040.

10. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978); *State v. Murphy*, Utah, 617 P.2d 399 (1980).