**The STATE of Utah, Plaintiff and Respondent,**

v.

**Dennis W. GRIFFIN, Shawn M. Henline, Marcella R. Griffin and Cindy Vigil, Defendants and Appellants.**

**The STATE of Utah, Plaintiff and Respondent,**

v.

**Marcella Rae GRIFFIN, Defendant and Appellant.**

Nos. 16388, 16669.

Supreme Court of Utah.

Feb. 20, 1981.

---

* CROCKETT, J., concurred in this case before his retirement.

Brad Rich, Salt Lake City, for Henline.

Lynn R. Brown, Salt Lake City, for defendants and appellants.

Robert B. Hansen, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

CROCKETT, Justice: *

These cases arise out of the same facts and have been consolidated for purposes of this decision.

Defendants were charged with aggravated robbery[1] of patrons and employees at the House of Sherman Beauty Salon. Upon a trial by jury, the defendants were found guilty. They appeal contending that their rights to be free from unreasonable searches and seizures, and to have witnesses testify in their behalf, were violated.

In the afternoon of July 18, 1978, acting on information giving rise to suspicion, police had been following a black and silver Camaro in the vicinity of Second East and 21st South in Salt Lake City. They temporarily lost sight of the car. The evidence is that the Camaro stopped in front of the House of Sherman Beauty Salon and two men, (later identified as the defendants) armed and wearing disguises, got out of the car and went in. At gun point, they ordered everyone in the salon to hand over their purses and jewelry. These they put into a duffel bag along with money taken from the salon's safe.

Meanwhile, Detective Jay Labrum had again spotted the Camaro. He observed the defendant Marcella Griffin get out of the car, go into the salon, and return carrying several purses. She drove away in the Camaro and shortly thereafter was apprehended by police officers.

During the progress of the robbery, Detective Labrum entered the salon where he was confronted by an armed man who took his wallet, handcuffs and gun. Defendant Shawn Henline handcuffed the police detective and then fled the scene with defendant Dennis Griffin in a 1974 Volkswagon belonging to one of the employees of the salon. Defendants were seen to abandon the Volkswagon and drive away in a green Chevrolet. The officers ascertained that it was owned by defendant Marcella Griffin. They stopped defendant Marcella Griffin in the Camaro, and suspecting that there was a connection between the crime, the car, and her residence, asked her if they could enter and search, mentioning the safety of her children and the possibility of the robbers being there. Mrs. Griffin consented.

While the officers were still in the house, they observed the defendants Dennis Griffin and Shawn Henline drive up and park near the house in a green Chevrolet. The defendants then walked around to the back of the Griffin residence. Shortly afterward, they returned to the front of the house and the officers placed them under arrest as participants in the robbery. They also seized a duffel bag which they observed on the back porch where the defend-

* Justice Crockett wrote this opinion prior to his retirement.

1. In violation of U.C.A.1953, § 76–6–302.

ants had been. It contained two guns and some of the jewelry and other evidence taken in the robbery. The green Chevrolet was impounded and an inventory was taken of its contents.

In attacking their convictions, the defendants contend that the trial court erred in refusing to suppress the evidence taken in the duffel bag and the green Chevrolet.

■ Commenting first in regard to the defendant Henline: He has no standing to complain of the seizure at the Griffin residence or the impoundment of the Griffin automobile. The right of the people to be secure in their persons and houses against unreasonable searches and seizures, as assured by Sec. 14, Art. I, Utah Constitution and Amendment IV of the federal Constitution is personal in nature and can be asserted only by one whose right is so violated.[2] Defendant Henline had no such rights in the house, the car, or in the evidence seized, and therefore cannot complain of the court's refusal to suppress that evidence.

The contention of the defendants Marcella and Dennis Griffin as to improper search presents a different problem. The test as to the propriety of a search is whether fair and reasonable persons would judge the search to be unreasonable as constituting an unjustified invasion into a person's right of privacy and security in his home or his property.[3] In making that determination,

there should be considered not only the rights of the individuals affected by the search, but also the right of the public to have crimes investigated and prosecuted.[4]

There should be no question about the propositions: that an officer may conduct a search if he has obtained the consent of the person whose property is to be searched;[5] and when an officer is where he has a right to be, evidence which is in plain view and reasonably believed to be evidence of a crime can properly be seized.[6] Defendants' contention here is that the actions of the officers exceeded the consent given. It has been held that whether the search exceeded the consent given is a question of fact to be determined by the trial court.[7] When the court has made that determination, its findings on such an issue will not be upset unless they are without foundation.[8]

We next turn attention to the seizure and search of the green Chevrolet. The justification for taking and searching that automobile is so obvious as to hardly require discussion. The officers had seen the persons who perpetrated the robbery drive that car.[9] Where they had good reason to believe that the automobile had been used in the commission of that crime, they were justified in searching it for evidence.[10] The same principle applies in these circumstances where the occupants were placed under arrest. The reasonable and prudent thing would be, not to leave it on the street, but

2. See *State v. Montayne*, 18 Utah 2d 38, 414 P.2d 958 (1966); *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).

3. See statement in *Stacey v. Emery*, 97 U.S. 642, 24 L.Ed. 1035, cited in our case of *State v. Lopez*, 22 Utah 257, 451 P.2d 772 (1969). Also see *State v. Folkes*, Utah, 565 P.2d 1125 (1977), certiorari denied, 434 U.S. 971, 98 S.Ct. 523, 54 L.Ed.2d 461; *State v. Criscola*, 21 Utah 2d 272, 444 P.2d 517 (1968).

4. See *State v. Kaae*, 30 Utah 2d 73, 513 P.2d 435 (1973).

5. *State v. Tuttle*, 16 Utah 2d 288, 399 P.2d 580 (1965); *State v. White*, Utah, 577 P.2d 552 (1978).

6. *State v. Folkes*, Utah, 565 P.2d 1125 (1977); *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1960).

7. *United States v. Dichiarinte*, 445 F.2d 126 (7th Cir., 1971); *Honig v. United States*, 208 F.2d 916 (8th Cir., 1953); *State v. Koncoules*, Maine, 343 A.2d 860 (1974). Also see 2 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment, sec. 8–1(c) at 624 (1978).

8. *State v. Eastmond*, 28 Utah 2d 129, 449 P.2d 276 (1972).

9. Evidence shows that police officers had a description of the defendants suspected of robbing the House of Sherman obtained from prior surveillance.

10. See *State v. Criscola*, 21 Utah 2d 272, 444 P.2d 517 (1968).

to impound it, and also to take an inventory of its contents.[11]

■ Defendants' assignment of error denying their right to compel the attendance of witnesses relates to the trial court's refusal of an offer to call Dr. Marigold Lintin, a psychologist, as an expert witness to testify about the credibility of eye-witness identification. There should be no question but that an accused has the right to have witnesses testify in his behalf. But this is usually and fairly interpreted as applying to witnesses who have knowledge of the facts about the crime alleged or of facts or circumstances which have a direct bearing thereon.[12]

The calling of expert witnesses to testify as to matters which would apply to any crime or any trial does not in the true sense offer testimony of a witness who has knowledge of the facts of the case. Rather, it would be in the nature of a lecture to the jury as to how they should judge the evidence. The subject matter of the proffered testimony of Dr. Lintin would be to evaluate the credibility of the state's witnesses in their identification of the defendants. The question of credibility of the testimony as to the identification of the defendants was for the jury to determine. Respective counsel were at liberty to argue as to the credibility and sufficiency of the evidence. There is always the possibility of calling expert witnesses to testify to various matters relating to the trial. This could include the merits of the jury system itself, or any of numerous aspects thereof.[13]

Defendants' counsel himself took the position which we regard as correct: that whether expert testimony should be allowed as to the merits of eye-witness identification is within the discretion of the trial court. The following is part of the discussion of the subject between court and counsel:

> Counsel: Now, I submit that it's within the Court's discretion, and frankly, if it's only fear of reversal on appeal that motivates this Court, then there's no reason to allow me to call Dr. Lintin, because it's within your discretion.
>
> The Court: I will disabuse your minds of that. I'm not concerned about being reversed any time. That's how the law grows, Mr. Rich.

The use of non-expert lay jurors has served quite well in our system of justice. It is based upon the premise that they are people of ordinary intelligence and experience and that they conscientiously perform their duties. We are in accord with the cases which hold that whether a jury should have a lecture from a psychologist as to the credibility of evidence is within the discretion of the trial court; and that he is not compelled to allow such testimony.[14]

Having found no error which would justify reversing the convictions of the defendants, they are affirmed. No costs awarded.

HALL, J., concurs.

WILKINS, Justice * (concurring in the result):

I concur in the result reached in this case but am unable to agree with the analysis by which the main opinion reaches that result.

I first must take exception to the analytical starting point of the main opinion:

> The test as to the propriety of a search is whether fair and reasonable persons would judge the search to be unreasonable as constituting an unjustified invasion into a person's right of privacy and security in his home or his property. [Citation omitted.]

11. See *State v. Criscola*, 21 Utah 2d 272, 444 P.2d 517 (1968); *State v. Crabtree*, Utah, 418 P.2d 484 (1980). And see *Chambers v. Mahoney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed. 419 (1970); *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).

12. See statement in *Washington v. Texas*, 388 U.S. 14, 22, 87 S.Ct. 1920, 1924–25, 18 L.Ed.2d 1019 (1976).

13. Other areas adjunctive to such a proceeding, such as the degree of efficiency of: the police in catching robbers, of prosecutors, defense counsel, the judges, or of jury trials themselves.

14. See, e. g., *United States v. Brown*, 540 F.2d 1048 (10th Cir., 1976); *State v. Valencia*, 118 Arizona 136, 575 P.2d 335 (1977).

* Wilkins, Justice, participated in this opinion prior to his resignation.

This "reasonableness" standard, though found in numerous decisions of this Court, does not comport with the requirements of the Fourth Amendment as laid down by the United States Supreme Court. And by the very vagueness and ad hoc character of this "standard," this Court invites abuses that may in large part be avoided by application of the appropriate constitutional standard.[1]

■ The correct starting point for the analysis of the legality of a search or seizure is the proposition that "searches outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions."[2] Here, the State claimed as an exception the consent of Defendant Marcella Rae Griffin.[3] And the record here indeed discloses sufficient evidence to support the District Court's determination that the peace officers did not exceed the scope of the consent given.

■ The main opinion's analysis of the seizure of the green Chevrolet automobile is also, in my opinion, constitutionally infirm. I believe that the seizure and subsequent search of the Chevrolet were illegal for reasons noted *infra*.

As noted by the Supreme Court in *Coolidge*, "[t]he word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears."[4] For the purposes of the Fourth Amendment, the seizure of the automobile here is factually indistinguishable from the seizure of the

---

1. The dangers inherent in the "reasonableness" approach are made vividly clear in the case now before us. In ruling on defendant's motion to suppress, the District Judge made the following comments from the bench:

    THE COURT: ... While you have been arguing and presenting the case of *State v. Richards* to the Court to support your proposition and in which is cited the *State v. Criscola* formula, I am directed to the language in the *Criscola* matter which says, "The question is whether under the circumstances the search is one which fair-minded persons knowing the facts, giving due consideration to the rights and interests of the public as well as to those of the subject, would judge to be unreasonable or oppressive, an intrusion upon the latter's rights."

    As I view the evidence so far, and I believe I'm fair-minded, to support *the Supreme Court's language*, a person's interpretation of that language would be that the vehicle which was viewed by Detective Lightfoot, whose testimony we have just heard, might very well have been used in one portion of the commission of this crime in that it would have been used to permanently deprive the owners of their property .... [Emphasis added.].

    By virtue of the fact that the reasonableness standard is in reality no standard at all, trial judges are invited to apply their own immediate reaction to the search or seizure in question rather than the legal analysis required by the Fourth Amendment.

2. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The exceptions to the warrant requirement are (1) plain view, *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); (2) searches incident to arrest, *Agnello v. United States*, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925); (3) automobile exception, *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); (4) hot pursuit, *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); (5) emergency situations, *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); (6) consent, *Zap v. United States*, 328 U.S. 624, 66 S.Ct. 1277, 90 L.Ed. 1477 (1946) (See, Williamson, *The Supreme Court Warrantless Searches, and Exigent Circumstances*, 31 Okla.L.Rev. 110 (1978) at n. 5).

3. The main opinion's treatment of the plain view exception to the warrant requirement is not supported by any United States Supreme Court authority. The main opinion states:

    There should be no question about the propositions: ... When an officer is where he has a right to be, evidence which is in plain view and reasonably believed to be evidence of a crime can properly be seized.

    The plain view exception was exhaustively examined and explained in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed. 2d 564 (1971). It was there pointed out that the three requirements for application of this exception are (1) the police must have "had a prior justification for an intrusion" (e. g., warrant for another object, hot pursuit), (2) the discovery of the evidence must be "inadvertent," (3) it must be "immediately apparent to the police that they have evidence before them." (403 U.S. at 466, 91 S.Ct. at 2038.) Thus the mere reasonable belief that the object viewed is evidence of a crime is not sufficient to invoke the plain view exception.

4. 403 U.S. at 461–462, 91 S.Ct. at 2035–2036.

automobile in *Coolidge*, and the Supreme Court said of that seizure:

> [S]urely there is nothing in this case to invoke the meaning and purpose of the rule of *Carroll v. United States* [267 U.S. 132 [45 S.Ct. 280, 69 L.Ed. 543] (1925)]— no alerted criminal bent on flight, no fleeting opportunity on an open highway after a hazardous chase, no contraband or stolen goods or weapons, no confederates waiting to move the evidence, not even the inconvenience of a special police detail to guard the immobilized automobile. In short, by no possible stretch of the legal imagination can this be made into a case where "it is not practicable to secure a warrant," *Carroll*, supra, at 153 [45 S.Ct. at 285] and the "automobile exception," despite its label, is simply irrelevant.[5] [Citation omitted.]

Thus, I must conclude that the seizure and subsequent search of the automobile in question were illegal. However, a review of the record convinces me that the introduction of the fruits of that search and seizure—keys belonging to Detective Labrum—was harmless error in that there was sufficient evidence introduced which was not tainted by the illegality of the search of the automobile to support the conviction of appellants.[6]

In short, I believe that a proper application of Fourth Amendment principles to the issues presented by this appeal does warrant an affirmance of the judgment.

MAUGHAN, C. J., and STEWART, J., concur in the opinion of WILKINS, J.

---

**5.** Id. at 462, 91 S.Ct. at 2035–2036.

**6.** Appellants have not attacked the legality of the search of the duffle bag on appeal and so we need not address that issue here.