451 P.2d 772

**The STATE of Utah, Plaintiff and Respondent,**

v.

**Dale Gilbert LOPEZ, Defendant and Appellant.**

No. 11272.

Supreme Court of Utah.

March 13, 1969.

7. See A. M. Castle & Co. v. Public Service Underwriters, 198 Wash. 576, 89 P.2d 506, 513 (1939).

Ronald N. Boyce, Salt Lake County Bar Legal Services, Salt Lake City, for appellant.

Vernon B. Romney, Atty. Gen., Joseph P. McCarthy, Lauren N. Beasley, Asst. Attys. Gen., Salt Lake City, for respondent.

CROCKETT, Chief Justice:

Defendant Dale Gilbert Lopez appeals seeking reversal of his conviction of second-degree burglary upon a trial to the court in Seventh District Court. He con-tends that his conviction is not supported by lawful evidence in that (1) he was placed under arrest without probable cause; (2) the claimed consent he gave to the search of his motel room was unlawfully obtained; (3) testimony concerning "other crimes" was improperly admitted; and (4) he was deprived of his right of trial by jury.

In this nonjury trial it was the prerogative of the trial court to judge the evidence and to find the facts. Therefore upon our review we proceed upon the assumption that the court believed those aspects of the evidence and drew such reasonable inferences therefrom as support his rulings and judgment.

On the night of January 27, 1968, the defendant was enroute from Dragerton, Utah, to Price, Utah, when his car hit an icy spot on the highway, skidded off the road and "turned on its side." The defendant, being unable himself to return the car to the highway, hitchhiked to Price where he reported the accident to the Sheriff's Office. While waiting to give a full report of the accident, Lopez left the Sheriff's Office to buy a pack of cigarettes. As he was returning, two deputies approached him and escorted him back to the Sheriff's Office, and asked him if he would take an "alcohol test," to which he willingly submitted, and which did not confirm intoxication. The evidence shows that at about that time, the defendant was given what

is now known as the "Miranda [1] warning" by Deputy Sheriff Charles Semken, and that he continued to remain at the jail. It is not entirely clear just when, nor upon what basis, but the deputies had begun to suspect the defendant of a burglary which had occurred at about 3:30 a. m. that morning, at the Betr-Buy Market in Price, and of which the defendant stands convicted.

The following events seem significant as bearing upon the issues here raised: After the defendant had reported his accident, the sheriffs confronted him with some items of property, identified as stolen property, which had been in the defendant's car. It is not shown, nor was any issue raised at the trial, as to how they came into possession of it. But it is evident from the record that this property, even though stolen elsewhere, played a part in focusing the officer's attention upon the defendant as a suspect in the burglary. When Deputy Semken confronted the defendant with this property and asked him how it came to be in his car, he stated that he had purchased it from a hitchhiker. Consequent thereto, the deputy asked questions and the defendant gave answers in substance thus: Where do you live? At the Tuxedo Motel in Wellington. Would it be all right to search your room? Yes, it would be all right. Where is the key? On the chain with other keys in the ignition of the automobile.

Acting on this information Deputy Semken went to the room and made a preliminary search. Next morning, in the company of another deputy and Mr. Charles Bezyack, the owner of the Betr-Buy Market, he went to the room and retrieved a number of articles matching the description of property which had been taken in the burglary including several rolls of quarters, nickles, dimes and pennies. On the way back to Price from the motel room, they found alongside the roadway the cash box which had been taken.

Prior to this trip, the defendant, in response to questions by the deputy about the burglary, had said that he "didn't know anything about it." But a significant fact in this case is that after the search, when the defendant was confronted with the facts concerning the articles found in his room, he made no further denial, and said to Mr. Bezyack: "Charlie, I am sorry. * * * I would like to pay you for all the damages. I can pay you back as soon as I get my income tax check back."

We direct our attention to the charge of unlawful arrest: The authority of an officer to make an arrest without a warrant includes cases in which "a felony has in fact been committed, and he has

1. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

reasonable cause for believing the person arrested to have committed it." [2] While this requirement is not satisfied merely by a showing that an officer acted in good faith,[3] neither does it go to the other extreme and require that he be sure of evidence which will establish guilt.[4] The requirement, as in so many areas of the law, is one of reason: that it be shown that under the facts and circumstances known to the officer, a reasonable and prudent man in his position would be justified in believing that the suspect had committed the offense.[5]

The sheriffs knew the facts hereinabove delineated concerning the discovery of stolen property which had been in the defendant's car, coupled with what could be regarded as a flimsy explanation of that fact. They also had information that just moments before the burglary had occurred at the Betr-Buy Market, a 1957 Ford four-door sedan of the same description as the defendant's car, had been seen coasting to a stop by the store. We think that these facts justify the trial court's view that the defendant was not arrested without the required probable cause.

This brings us to the question raised as to the validity of the consent given to the search of defendant's motel room. In this connection we observe that under the circumstances here shown it would have been very little trouble, and it may have been a prudent precaution, to obtain a search warrant. Nevertheless, that was not done and we confront the question whether what was done so tainted the evidence and the conviction that it must be nullified. We agree with the soundness of these principles argued by the defense: that the constitutional privilege against self-incrimination includes not only the privilege of remaining silent, but also the concomitant right to have an attorney and to consult with him both before and during an interrogation; and that where there is an in-custody questioning by police officers, the prosecution has the burden of showing that an accused knowingly and intelligently waived his privilege in that regard.[6] The defendant does not dispute the fact that he had these rights explained to him, nor does he contend that he asked to have an attorney, or that the privilege was denied him. Though there is conflict between the defendant's version of what was done and

2. Sec. 77–13–3(3), U.C.A.1953.
3. Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959).
4. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

5. Stacey v. Emery, 97 U.S. 642, 24 L.Ed. 1035 (1878).
6. Escobedo v. Illinois, 378 U.S. 478, 490, n. 14, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).

that given by the deputies, according to their version he voluntarily answered the questions as hereinabove recited. This provides ample basis to support the conclusion that he consented to the search and thus the trial court was justified in receiving the evidence.

Defendant's next charge of error is that receiving testimony concerning the stolen articles which came from his car, relates to another crime and was, thus, improper. Concededly, evidence of other crimes is not admissible if the purpose is to disgrace the defendant as a person of evil character with a propensity to commit crime and thus likely to have committed the crime charged. However, if the evidence has relevancy to explain the circumstances surrounding the instant crime, it is admissible for that purpose; and the fact that it may tend to connect the defendant with another crime will not render it incompetent.[7] Such harm as there may be in receiving evidence concerning another crime is to be weighed against the necessity of full inquiry into the facts relating to the issues. Here a question was raised as to the evidence obtained from searching defendant's motel room which in turn involved the propriety of the defendant's being detained and

questioned by the sheriff. This whole picture unfolded because of what had happened to his car, of the same description as one seen at the time and place of the crime, and the stolen property which was in it. A point of interest here is that the defendant's objection to this evidence from the car is not as to how it came into the possession of the police officers (which the record does not show), but that it connected him with another crime. If it does so, as he argues, it tends to support the idea that the sheriffs had a reasonable basis for detaining him and for the investigation they made.

We find no merit in defendant's contention as to a jury trial.[8] Defendant's counsel stated in open court with the defendant by his side:

I think on the basis of the discussion between court and counsel in chambers that the court may discharge the jury.

This meets requirement of Sec. 77–27–2, U.C.A.1953, which provides that the waiver of a jury must "be made in open court and entered in the minutes," and the record indicates with sufficient clarity that the right was waived. In this respect this case is analogous to the case of Barlow et al. v.

---

7. 1 Wharton, Criminal Evidence, Secs. 233 et seq. (12th Ed. 1955); State v. Dickson, 12 Utah 2d 8, 361 P.2d 412 (1961).

8. As to safeguarding the right of trial by jury see Duncan v. Louisiana, 391 U.S. 145, 194, 20 L.Ed.2d 491, 522 (1968); Cottrell v. Grand Union Tea Co., 5 Utah 2d 187, 299 P.2d 622 (1956).

Young.[9] Therein it was held that the defendants, who were in open court alongside their counsel when he waived a jury, could not thereafter complain of the waiver. The matter of trial tactics is not the concern of the court, but of the defendant and his counsel. Yet it is not amiss to remark here that the waiver of a jury was probably as good strategy as any. On the basis of the evidence hereinabove recited the guilt of the defendant seems obvious; and whatever chance he had for an acquittal would depend upon getting the evidence excluded for technical reasons, which his counsel attempted to do.

Affirmed. No costs awarded.

CALLISTER, TUCKETT and HENRIOD, JJ., concur.

ELLETT, Justice (concurring):

I concur except that I do not agree that the Constitution gives a defendant a right to consult with an attorney before and during an interrogation. I agree that there *are* courts which say that a guilty defendant must be turned loose to further prey upon society absent his attorney's presence before and after the arresting officer asks him where he got the loot, but I cannot think that it is sound reasoning to arrive at such a holding.