STATE of Utah, Plaintiff and Respondent,

v.

Charles Lee GIBSON, aka Mike Gibson, Defendant and Appellant.

No. 14934.

Supreme Court of Utah.

June 9, 1977.

Harry E. Snow, Moab, for defendant-appellant.

Vernon B. Romney, Atty. Gen., Earl F. Dorius, David Schwendiman, Asst. Attys. Gen., Salt Lake City, William L. Benge, Grand County Atty., Moab, for plaintiff-respondent.

CROCKETT, Justice:

Defendant Charles Lee Gibson appeals from his conviction of second-degree murder [1] for killing Leslie Wayne Wigaard on the night of June 17–18, 1976 just off Highway 70 in Grand County near the Colorado border.

Defendant does not dispute that he killed Wigaard by stabbing him with a knife, but contends: (1) that because of his evidence of mutual combat and self defense his conviction of second-degree murder was not

1. 76–5–203(1), U.C.A.1953, as amended.

justified; and (2) that the court erred in admitting evidence that subsequent to the killing defendant raped a woman present at the scene.

At about noon on June 17, 1976, Wigaard picked up the defendant who was hitchhiking just west of Denver and they proceeded westward to Grand Junction, Colorado, arriving there about 5:30 p. m. They met Ms. Patricia Ackerson, a young woman who had been a paramour of Wigaard. He had been living with her and her two children for some months prior to May, 1976.

The three of them visited some friends of Wigaard. They drank beer and smoked some marijuana. After Ms. Ackerson left for a job interview at 8:00 p. m., Wigaard and defendant remained and continued their drinking and smoking and, later, went to a couple of bars. About 1:00 a. m., they returned to see Ms. Ackerson at her sister's home. Wigaard went inside while the defendant remained in the cab of Wigaard's pick-up camper. The evidence is that there had been a reconciliation and that Wigaard told Ms. Ackerson that he wanted to take care of her and her children. They then returned to the camper. Wigaard had told the defendant that he would take him to Green River. Wigaard began driving west on Interstate 70.

After entering Utah, Wigaard became sleepy and Ms. Ackerson started driving. At the defendant's request, she stopped at a freeway exit and let him off to find another ride because he said they were driving too slow. She drove on about another ten miles and stopped. She and Wigaard got into the back of the camper and began making love. Meanwhile, the defendant had got his other ride, but when he saw the camper parked on the side of the road, he asked to be let out and walked back to it. He inquired if anything was wrong and asked if they would be leaving soon. Wigaard told him they were taking a break and suggested that he wait in the cab. But defendant urged that they leave immediately. Wigaard called him an obscene name and the defendant challenged him to "Come outside and say that;" and Wigaard got out. As might be expected there is sharp conflict in the evidence as to what then occurred.

Defendant's version is that Wigaard had a knife;[2] that defendant wrested it from him and stabbed him. The version testified to by Patricia Ackerson was that when Wigaard got out defendant was the aggressor and that Wigaard did not hit him; that the first she saw of a knife was in defendant's hand when he was stabbing Wigaard. The immutable fact is that the latter was stabbed three times, one was a six-inch deep wound in his back which perforated his lung.

After Wigaard was on the ground bleeding, Ms. Ackerson asked the defendant to help her get him in the truck and to a doctor. Defendant responded "Sure, after I . . . [crude threatening obscenity] . . . you." Then while the deceased lay gasping and bleeding the defendant raped her at knife point. They then placed Wigaard in the camper and she began driving back to Grand Junction to find a hospital. After entering Colorado, the defendant told her to stop at the Fruita exit and he got out. She took the deceased to a hospital in Grand Junction, but he was dead when they arrived. From a description furnished the Fruita police they located and arrested the defendant.

The main thrust of defendant's argument is that because of his evidence of mutual combat and/or self-defense there is no basis upon which reasonable jurors could believe beyond reasonable doubt that he was guilty of second-degree murder. Our statutes pertinent to that contention are: Section 76–5–203(1), U.C.A.1953, as amended which states:

Criminal homicide constitutes *murder in the second-degree if* . . . the actor: (a) Intentionally or *knowingly* causes the death of another . . .

Supplementing this, Section 76–2–103, U.C.A.1953, furnishes a statutory definition of knowingly:

2. The knife was one which belonged to Wigaard and was carried in his camper.

. . . *A person acts knowingly, when he is aware that his conduct is reasonably certain to cause the result.*

■ Assuming that the jury believed those aspects of the evidence which support their verdict, as the rules of review require us to do,[3] including the three stab wounds, coupled with the evidence of defendant's conduct immediately thereafter while he accomplished the purpose he seemed bent upon, there is ample basis in the evidence to support the jury's conclusion that he acted wilfully and knowingly in causing the death of the deceased.

The difficulty with the defendant's argument about self-defense and/or mutual combat is his inability, or his unwillingness, to accept the fact that the jury believed evidence other than his own. It is plainly apparent that they believed that it was not the deceased, Wigaard, who was bothering the defendant, but that it was the defendant who intruded upon the deceased and provoked the incident which resulted in the latter's death. Defendant's conduct does not come within the protections of our statute, Sec. 76–2–402(1), U.C.A.1953, as amended, which allows the use force against another when one "reasonably believes that such is necessary to defend himself," but subsection (2) provides that :

A person is not justified in using force under the circumstances specified in paragraph (1) of this section if he . . (c) *Was the aggressor or was engaged in a combat by agreement,* unless he withdraws and effectively communicates to such other person his intent to do so and the other notwithstanding continues or threatens to continue the use of unlawful force.

Even if it should be accepted that the provocation resulted in mutual combat, there is no indication that the defendant desired to withdraw nor that he so indicated to the deceased.

On his other issue defendant argues that the trial court erred in admitting the evidence concerning the rape of Ms. Ackerson because it so added to the gruesomeness of the affair that the verdict of second-degree murder resulted more from that evidence than from his killing of Wigaard.

■ It is of course acknowledged that evidence that an accused committed an offense different than the one charged is generally not admissible;[4] particularly so when the effect thereof is but to besmirch, disgrace or prejudice the defendant in the eyes of the jury.[5] Nevertheless, if the evidence has relevance and probative value relating to his commission of the crime charged, the fact that it shows the commission of another crime does not render it incompetent.[6]

Defendant further urges that in spite of the foregoing, the trial court erred in refusing to exercise the discretion provided for in Rule 45, Utah Rules of Evidence:

. . . the judge *may in his discretion* exclude evidence if he finds that its probative value is substantially outweighed by the risk that its admission will . . . (b) create substantial danger of undue prejudice . . .

[All emphasis in the decision added.]

■ In this instance the evidence concerning the rape of Ms. Ackerson was so closely involved in the total picture of the crime, and defendant's possible motive for the killing, that it is difficult to see how it properly could have been excluded. Moreover, on this point the determination of the balancing of the probative value against any prejudicial effect must necessarily rest within the sound discretion of the trial

---

3. *State v. Canfield,* 18 Utah 2d 292, 422 P.2d 196 (1967); *State v. Berchtold,* 11 Utah 2d 208, 357 P.2d 183 (1960).

4. *State v. Schieving,* Utah, 535 P.2d 1232 (1975); *State v. Bowen,* 43 Utah 111, 134 P. 623 (1913).

5. *State v. Kazda,* 14 Utah 2d 266, 382 P.2d 407 (1963); *State v. Lopez,* 22 Utah 2d 257, 451 P.2d 772 (1969).

6. *State v. Kasai,* 27 Utah 2d 326, 495 P.2d 1265 (1972); 1 Wharton, Criminal Evidence, Secs. 233 et seq. (12th Ed.1955); and see Rule 55, Utah Rules of Evidence.

court;[7] and the determination he makes thereon should not be disturbed on appeal unless there was a clear abuse of his discretion.[8] We do not think there was any such abuse of discretion here, but that the trial judge properly decided that the jury should be permitted to consider all of the evidence relating to the conduct of the parties involved in the whole episode.

 After consideration of the defendant's arguments and the record in this case in the light of the standard rules of review,[9] it is our opinion that the defendant was accorded his entitlement of a fair trial by a jury under proper supervision by the district judge.

Affirmed. No costs awarded.

ELLETT, C. J., and MAUGHAN, WILKINS and HALL, JJ., concur.

---

7. As Rule 45, Utah Rules of Evidence expressly provides.

8. Cf. *Bambrough v. Bethers*, Utah, 552 P.2d 1286 (1976); *State ex rel. Dept. of Highways v. Nevada Aggregates,* 551 P.2d 1095 (Nev.1976).

9. *State v. Baran,* 25 Utah 2d 16, 474 P.2d 728 (1970); *State v. Kelbach,* 23 Utah 2d 231, 461 P.2d 297 (1969).