641 P.2d 1172 (1982)
STATE of Utah, Plaintiff and Respondent,
v.
William Louis FORSYTH, Defendant and Appellant.
No. 16636.
Supreme Court of Utah.
January 27, 1982.
David L. Wilkinson, Atty. Gen., Robert R. Wallace, Asst. Atty. Gen., Salt Lake City, for defendant and appellant.
Stephen R. Madsen, Provo, for plaintiff and respondent.
*1173 OAKS, Justice:
This is an appeal from a jury conviction on four counts of theft by deception in violation of U.C.A., 1953, § 76-6-405, as amended.[1] Defendant was sentenced to 1-15 years on each count, sentences to run concurrently. The only issue defendant urges on appeal is that it was prejudicial error to admit the testimony of ten investors other than the four alleged victims. We affirm the conviction.

I. EVIDENCE OF GUILT
Viewing the evidence in the light most favorable to the jury's verdict, State v. Gorlick, Utah, 605 P.2d 761 (1979), the relevant facts against which the alleged error must be judged are as follows. (Defendant makes no separate contention that the evidence was insufficient for the jury to find him guilty  only that the jury was prejudiced in its deliberations by the testimony of the other investors.)
From May, 1973, through July, 1974, defendant, who was organizer and president of Great Outdoors, Inc. (hereafter "the corporation"), solicited persons to invest in that corporation to provide capital for the development of two health spas in Orem. In March through June, 1974, when the four victims invested, the minispa, at 1250 South 350 East, was under construction and was to be completed with the investors' funds and put into operation within a few months. Sales of memberships in that spa were then to provide funds for the construction of the large "Sportsman's Spa" at 250 West Center, where footings had been poured but where no other construction was yet underway.
After personal conversations with the defendant, each of the four victims, Turley, DeHoyos, Uzelac and Broadbent, signed an agreement by which he invested $5,000 in the corporation (in the case of DeHoyos, $3,000 plus agreed services). In this agreement, the corporation, by the signature of defendant, its president, agreed that each investor of $5,000 would have 10,000 shares of stock and a lifetime family membership in the Sportsman's Spa without membership or monthly dues. The corporation also agreed "to refund all monies invested by INVESTOR on or before twelve months from the date of this agreement, from receipts from membership sales in the Sportsman's Spa... ."[2] Each investor paid the agreed amount at the time the agreement was signed. No monies were ever refunded, and no memberships were ever granted.
As is evident from the formal charges, the jury instructions, and the closing arguments, the prosecution contended that the defendant committed deception by false representations of fact and by promising to refund the victims' investments within the promised period of time (or from the membership proceeds) when he in fact had no intention of doing so. Misrepresentations to all four victims concerned (1) the corporation's or defendant's ownership of real estate to secure the investor's investments; (2) the total amount being raised for the development of the spas; and (3) the total number of investors being sought. These subjects are treated below. In addition, defendant represented to some of the victims that the financial soundness of the spa venture and the attractiveness of their investment *1174 would be enhanced by future revenues from the corporation's ownership of a nearly completed spa in Florida, of a chain of campgrounds in the western United States and Mexico (Great Outdoors Systems), of a real estate holding company (Build Estate), and of an investment organization (Eagle International).
All four of the victims testified that a material consideration in making their investment was defendant's representation that he or the corporation "owned" the property at 250 West Center (where the large spa would be constructed), which would provide security for the promised refund of their investments. DeHoyos testified that defendant told him he owned the land "all clear." Turley testified that defendant told him he "owned" the property and although he was indebted for about $50,000 thereon there was plenty of equity to guarantee the refund of Turley's money in a year's time since the property was worth about $240,000. Broadbent and Uzelac each testified that defendant told him he (or the corporation) "owned" the property and that it would provide adequate security for the return of the investment monies in a year in the event of any problems. Both testified that by this statement they understood defendant to be saying that the land was "paid for" or "free and clear." In contrast, there was uncontroverted evidence at trial that defendant was buying the 250 West Center property on contract, and had then paid, in addition to interest, only $34,000 of the total purchase price of $109,000. There was also evidence from which the jury could have concluded that the subject property was then worth less than $125,000.
All four of the victims testified that defendant told them at or just before the time of their investment that to complete the planned development of the two spas the corporation needed only a total of $50,000 of invested capital, which was being provided by only ten investors. In May, 1974, DeHoyos and Uzelac were told that they were numbers seven and eight, respectively. In June, Broadbent was told that he was the last or second-to-last of the ten. These investors indicated that the defendant's representations about the amount needed, the number of investors, and their own sequence were important to their decision to invest. In contrast, it appeared from other evidence (apparently without contradiction) that in this period defendant obtained investments in the corporation totalling approximately $180,000, and that at least fourteen persons invested. It also appeared that, at the time defendant represented to the victims that only $50,000 of invested capital was needed to complete the spa ventures, the minispa was still incomplete with sums overdue for ongoing construction; the corporation was in default on the real estate contract under which it was purchasing the 250 West Center property; and at least $63,000 was overdue on various corporation contracts, including over $30,000 in refunds promised in the contracts of the earliest investors.
Apparently believed by the jury, the foregoing evidence was sufficient to sustain the jury's verdict of guilt on all four counts.
In addition to the testimony of the four victims, the prosecution's case included the testimony of ten other investors. The admissibility and possible prejudicial effect of their testimony is the sole issue defendant contests on this appeal.

II. RULE 55 OF THE UTAH RULES OF EVIDENCE
Defendant characterizes the other investors as a prejudicial parade of witnesses whose testimony did not come within the exceptions of Rule 55 of the Utah Rules of Evidence because, instead of giving evidence of misrepresentations by the defendant, these witnesses merely recited their complaints about not obtaining the agreed refund of their own investments. The trial court admitted the other investors' testimony to show the defendant's pattern, scheme, or design. The state supports that action by arguing that "the testimony of the other investors reveals substantial relevant misrepresentations made by the defendant in perpetration of a common plan or scheme," which was therefore admissible under Rule 55.
*1175 Rule 55 of the Utah Rules of Evidence, whose full text appears in the footnote,[3] has syntax at odds with its substance. Its syntax suggests a general rule followed by exceptions, but an examination of its substance reveals an exception followed by a general rule followed by illustrations.
Rule 55 begins by specifying the one purpose for which "other crime evidence" cannot be admitted  to prove criminal disposition as a basis for an inference of guilt of another crime.[4] The text then states the general rule that "subject to Rules 45 and 48, such evidence is admissible when relevant to prove some other material fact including" those listed. The term including indicates that the list is illustrative, not exhaustive. Thus, Rule 55 provides that, subject to Rules 45 and 48, "other crime evidence" is admissible when relevant to prove any material fact, including those listed, but not including criminal disposition as the basis for an inference that the defendant committed another crime on another occasion.
Unless Rules 45 or 48 dictate or permit a contrary result,[5] the admissibility of evidence that a defendant committed some other crime or civil wrong turns on whether that evidence is "relevant to prove some ... material fact" in the crime or charge on trial. This is the approach specified in Rule 311 of the American Law Institute's Model Code of Evidence (1942), in Rule 404(b) of the Federal Rules of Evidence Manual (2d ed. S. Saltzburg & K. Redden, 1977), and in 1 Wigmore on Evidence §§ 190-94, 216 (3d ed. 1940). It is also the rule established in the better-reasoned opinions of this Court. See, generally, R. Boyce, "Evidence of Other Crimes or Wrongdoing," 5 Utah Bar Journal 31 (1977).
In State v. Harries, 118 Utah 260, 283-84, 221 P.2d 605, 617 (1950), which affirmed a conviction based partly on other-crime evidence showing a public official's plan or scheme in the receipt of a bribe to overlook violations, this Court declared:
Any pertinent fact which throws light upon the subject under judicial consideration, the accused's guilt or innocence of the crime for which he is charged, is admissible. Such fact is not to be excluded merely because it may also prove or tend to prove that the accused has committed another similar crime. Relevant and material evidence does not become irrelevant or immaterial merely because it points to other offenses.
Similarly, in affirming a conviction for a confidence game in State v. Scott, 111 Utah 9, 20-21, 175 P.2d 1016, 1021-22 (1947), the Court, speaking through Mr. Justice Wolfe, explained:
The basic rule of admissibility of evidence is that all evidence having probative value  that is, that tends to prove an issue, is admissible... . As to the admissibility of evidence of prior offenses some courts (ours included as will be hereafter shown) have seemingly ... announced *1176 [the rule] as one where evidence of other crimes than that charged against the accused is inadmissible. Such courts then set up exceptions to that rule which render certain evidence of other crimes admissible.
The better analysis is that such evidence is admissible not because it comes under an exception to the rule of exclusion but that the rule of exclusion is sufficiently narrow that it does not apply to such evidence and the evidence is therefore admissible under the basic rule that all evidence having probative value is admissible.
The Court then referred approvingly to Rule 311 of the Model Code of Evidence and to State v. Nemier, 106 Utah 307, 148 P.2d 327 (1944), and an earlier case which established the rule that in criminal cases evidence of other crimes is admissible unless it is relevant solely to show propensity to commit crime. 111 Utah at 21, 175 P.2d at 1022. This rule was expressly adopted "to be the law of this state." Id. at 22, 175 P.2d at 1023.[6]
We reaffirm the rule as described in State v. Harries and State v. Scott, supra. Whether the testimony of the other investors in this case showed a crime, a civil wrong, or (as defendant contends) only a lack of success in a business venture, and whether or not the testimony comes within any of the exceptions listed in Rule 55, the testimony is admissible if, and only if, it is relevant to prove some fact that is material to the crime charged. We therefore concentrate our inquiry on the relevance of the testimony of the other investors.

III. TESTIMONY OF OTHER INVESTORS
As noted above, the state argues that the testimony of the other investors is relevant (1) to prove that the defendant made misrepresentations to the victims and (2) to show defendant's common plan or design.
Some of the testimony of the other investors was clearly admissible to prove the inaccuracy of the factual representations defendant made to the victims. The other investors' testimony shows that Turley, DeHoyos, Uzelac and Broadbent were not part of a group of ten investors, as defendant told them, but part of a group of at least fourteen, and that DeHoyos and Uzelac were not numbers seven and eight, as defendant represented, but numbers ten and eleven. By itself, this testimony also shows that the corporation obtained at least $79,000 of invested capital, rather than the $50,000 represented by defendant, and that the corporation had already obtained at least $51,000 with Turley's investment, and $69,000 with the investment of Broadbent, the last of the four.
More importantly, the testimony of five of these ten other investors (the earliest in point of time) showed that before defendant made the promises and representations to the four victims, the refund obligations under the earliest investment contracts were already overdue and defendant had told these earliest investors that the corporation did not have money to repay them. This evidence was relevant to the prosecution's contentions (1) that defendant had no intention or reasonable expectation of keeping his promise to refund the investments of the four victims, and (2) that defendant's statements that the corporation was then in sound financial condition and that the venture could be completed with the anticipated $50,000 of invested capital were false.
Some of the other investor testimony was also admissible under the theory the state identifies as "common plan or scheme," but this theory must be employed with caution. References to this theory as if it were an independent basis or reason for the admission of evidence are unjustified. Evidence is not admitted merely because *1177 it shows a common plan, scheme, or manner of operation. Instead, evidence of a common plan, scheme, or manner of operation is admitted where it tends to prove some fact material to the crime charged. In some cases, the fact to which the common plan or operation is relevant will be the identity of the defendant as the perpetrator of the crime. People v. Condon, 26 N.Y.2d 139, 26 N.Y.S.2d 139, 257 N.E.2d 615 (1970); Commonwealth v. Wable, 382 Pa. 80, 114 A.2d 334 (1955).[7]
In other cases, evidence that a defendant had committed other crimes with a modus operandi similar to that of the charged offense will be relevant and admissible under Rule 55 to prove defendant's knowledge or criminal intent (or the absence of mistake or accident). State v. Brown, Utah, 577 P.2d 135 (1978); State v. Cauble, Utah, 563 P.2d 775 (1977); State v. Harries, supra; State v. Scott, supra. Some of the testimony of other investors was relevant on that theory. Thus, the fact that defendant continued to solicit investors and to make refund promises in the summer of 1974, when the corporation was in default on its real estate contract and many of its investment contracts and in precarious (if not insolvent) financial condition, is relevant to the intent with which defendant made similar promises in earlier contracts with the victims. The common investment plan or contract upon which defendant solicited the other investors and the victims was also relevant to establishing that all of these persons were investing in the same venture, a fact essential to proving that defendant misrepresented the number of investors and the amount being solicited for the venture.
Although the theories discussed above support the admission of most of the evidence elicited from the other investors, some of their testimony went beyond what can properly be justified as tending to prove facts material to the crime charged. For example, the other investors testified that they did not receive a refund of their investments as promised by defendant and the corporation. This experience, though in common with the victims', proves nothing relevant to the misrepresentations that are the gravamen of the crime defendant was alleged to have committed. Except to the extent already noted (with respect to the overdue status of some of these refund promises at the time defendant made representations to the victims), this testimony should not have been admitted. However, in view of the abundant other evidence available to the jury in this case, we are not persuaded that any error "affect[ed] the substantial rights of a party," U.C.A., 1953, § 77-35-30, in the sense that the evidence which should have been excluded "probably had a substantial influence in bringing about the verdict or finding." Utah Rules of Evidence, Rule 4; State v. Cox, 74 Utah 149, 152, 277 P. 972, 973 (1929).
Defendant's convictions are affirmed.
HALL, C.J., and HOWE, J., concur.
STEWART, Justice (concurring):
I concur in the majority opinion, but I am constrained to point out that the law concerning the admissibility of prior misconduct is more complicated than simply determining whether the evidence is relevant. I agree with the majority opinion that prior criminal activity may be admissible to prove a material fact other than absence of mistake, accident, motive, opportunity, intent, preparation, plan, knowledge or identity. However, allowing the admissibility of evidence to turn "on whether that evidence is `relevant to prove some ... material fact'" and relying on "the basic rule that all evidence having probative value is admissible," fails to take into account the fundamental, time-honored rule that a person should be held criminally accountable only for the *1178 particular act charged, and not his character. The law has long recognized the danger that a finder of fact may be unduly influenced by prior criminal acts and has sought to preclude such acts from influencing the outcome.
The rule excluding evidence of prior misconduct to show the character or disposition of a defendant was established not because such evidence was irrelevant, but because of the likelihood that it would skew the fact-finding process. As stated in 1 Wigmore on Evidence, § 194 (3rd ed. 1940) at 646:
It may almost be said that it is because of this indubitable Relevancy of such evidence that it is excluded. It is objectionable, not because it has no appreciable probative value, but because it has too much. The natural and inevitable tendency of the tribunal  whether judge or jury  is to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the present charge, or to take the proof of it as justifying a condemnation irrespective of guilt of the present charge.
Dean Wigmore reduced the reasons behind the policy of exclusion to three:
(1) The over-strong tendency to believe the defendant guilty of the charge merely because he is a likely person to do such acts; (2) the tendency to condemn, not because he is believed guilty of the present charge, but because he has escaped unpunished from other offenses; both of these represent the principle of Undue Prejudice ...; (3) The injustice of attacking one necessarily unprepared to demonstrate that the attacking evidence is fabricated; this represents the principle of Unfair Surprise... . [Id. § 194 at 650.]
Evidence of prior misconduct raises this danger regardless of the reason for which the evidence is submitted. To set forth a rule which merely relies on the relevancy of the evidence to prove a material fact involved in the crime charged is to "lose sight of the underlying policy of protecting the accused against unfair prejudice." McCormick on Evidence, § 190 (2d ed. 1972).
Referring to the federal counterpart to Rule 55, 10 Moore Federal Practice, ¶ 404.21[2] (2d ed. 1981) states: "Admission of other crimes evidence is not guaranteed under Rule 404(b) even if it is offered for `other purposes... .' The danger of undue prejudice must be balanced against the probative value of the evidence in making this determination." (Emphasis added.)
Courts have consistently admitted evidence of prior criminal conduct only after balancing the prejudicial impact against the probative value. E.g., State v. McCumber, Utah, 622 P.2d 353 (1980); State v. Gibson, Utah, 565 P.2d 783 (1977). See also United States v. Shavers, 615 F.2d 266 (5th Cir.1980); United States ex rel. Durso v. Pate, 426 F.2d 1083 (7th Cir.1970), cert. denied, 400 U.S. 995, 91 S.Ct. 469, 27 L.Ed.2d 445 (1971); United States v. Bradwell, 388 F.2d 619 (2nd Cir.1968), cert. denied, 393 U.S. 867, 89 S.Ct. 152, 21 L.Ed.2d 135 (1968); People v. Hornal, 29 Ill. App.3d 308, 330 N.E.2d 225 (1975); State v. Johnson, Iowa, 237 N.W.2d 819 (1976); Whitty v. State, 34 Wis.2d 278, 149 N.W.2d 557 (1967).
McCormick on Evidence, § 190 (2d ed. 1972) suggests the factors to be considered in the weighing process:
[T]he problem is not merely one of pigeon-holing, but one of balancing, on the one side, the actual need for the other-crimes evidence in the light of the issues and the other evidence available to the prosecution, the convincingness of the evidence that the other crimes were committed and that the accused was the actor, and the strength or weakness of the other-crimes evidence in supporting the issue, and on the other, the degree to which the jury will probably be roused by the evidence to overmastering hostility.
This principle of balancing potential prejudice of the evidence with its probative *1179 value is clearly required by Rule 55, which states admissibility is subject to Rule 45, Utah Rules of Evidence. Rule 45 states that the trial judge should exclude evidence "if he finds that its probative value is substantially outweighed by the risk that its admission will ... create substantial danger of undue prejudice or of confusing the issues or of misleading the jury... ." To overcome the presumption that prior criminal conduct is not admissible, it is necessary to consider just how probative the evidence is, what the need for the evidence is in light of other evidence, and how strong the prejudicial effect may be.
Because of the nature of this case, I do not think that there was error.
MAUGHAN, J., heard the arguments, but died before the opinion was filed.
NOTES
[1] Section 76-6-405(1) provides:

A person commits theft if he obtains or exercises control over property of another by deception and with a purpose to deprive him thereof.
The relevant definition of "deception" is § 76-6-401(5)(a), which states:
"Deception" occurs when a person intentionally:
Creates or confirms by words or conduct an impression of law or fact that is false and that the actor does not believe to be true and that is likely to affect the judgment of another in the transaction;...
U.C.A., 1953, § 76-6-405(2) also provides:
Theft by deception does not occur, however, when there is only falsity as to matters having no pecuniary significance, or puffing by statements unlikely to deceive ordinary persons in the group addressed. "Puffing" means an exaggerated commendation of wares or worth in communications addressed to the public or to a class or group.
[2] The refund period was four months for DeHoyos. The agreement with Uzelac, executed on a different form (modified to fit this investment), does not specify a time for refund, stating only that the investment monies "will be paid back from Sportsman's Spa Membership Sales."
[3] to Rule 47 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his disposition to commit crime or civil wrong as the basis for an inference that he committed another crime or civil wrong on another specified occasion but, subject to Rules 45 and 48, such evidence is admissible when relevant to prove some other material fact including absence of mistake or accident, motive, opportunity, intent, preparation, plan, knowledge or identity.
U.R.E. Rule 55.
[4] This is consistent with our decisions. E.g., State v. Daniels, Utah, 584 P.2d 880, 882 (1978); State v. Lopez, 22 Utah 2d 257, 262, 451 P.2d 772, 775 (1969).
[5] For the reasons elaborated in Justice Stewart's concurring opinion, Rule 45 provides that "the judge may in his discretion exclude evidence if he finds that its probative value is substantially outweighed by the risk that its admission will ... create substantial danger of undue prejudice or of confusing the issues or of misleading the jury... ." While the danger of undue prejudice or confusion or misleading may sometimes outweigh the probative value of evidence that a defendant "committed another crime or civil wrong on another specified occasion" (Rule 55), we find no abuse of discretion in the fact that the trial court did not exclude the evidence under Rule 45 in this case. Rule 48 is not relevant to these facts. These qualifications being inapplicable, this issue turns on the meaning of Rule 55, discussed above.
[6] Accord, State v. Gibson, Utah, 565 P.2d 783, 786 (1977); State v. Torgerson, 4 Utah 2d 52, 54, 56, 286 P.2d 800, 801, 802 (1955) (citing State v. Scott in main opinion and dissent). But compare State v. Schieving, Utah, 535 P.2d 1232 (1975), which apparently misstates the rule in State v. Harries (in terms of general inadmissibility subject to exceptions), and makes no reference to Rule 55.
[7] Utah decisions approving the use of other crime evidence relevant to the issue of identity but not relying on common plan or manner of operation include State v. McHenry, 7 Utah 2d 289, 323 P.2d 710 (1958); State v. Pollock, 102 Utah 587, 129 P.2d 554 (1942).