The STATE of Utah, Plaintiff
and Respondent,

v.

Patrick D. JOHNSON, Defendant
and Appellant.

No. 20814.

Supreme Court of Utah.

Dec. 31, 1987.

David L. Wilkinson, Earl F. Dorius, Salt Lake City, for plaintiff and respondent.

Frances M. Palacios, Salt Lake City, for defendant and appellant.

STEWART, Associate Chief Justice:

Patrick Johnson, a parolee who resided with his mother in her apartment, was convicted of burglary and forgery. Johnson appeals both convictions on the ground that two checks admitted against him at trial were obtained from his mother's apartment in violation of the Fourth Amendment. He also argues that the trial court erred in admitting evidence of other crimes and in giving a jury instruction which he contends contained a mandatory rebuttable presumption on the burglary conviction.

## I. THE FACTS

The case arises out of the burglary of the Four Square Church. Among the items taken in the burglary were two books of blank checks from the church's checking accounts. On the same day that the burglary was discovered, a church check was forged and cashed at Macey's Sack N' Save by a person claiming to be Cary Montoya, the payee named on the check. Later that same day, a second check, not belonging to the church, was cashed at Stimson's Market on the personal account of Cary Montoya by a person who identified himself as Cary Montoya. These checks had been reported stolen by Montoya months earlier, and the account was closed. The store

clerks who cashed the two checks identified, with varying degrees of certainty, Patrick Johnson as the person who presented himself as Cary Montoya.

Sometime after the identification, Salt Lake City Police Detective Kyle Jones informed Johnson's parole officers, John Shepard and Rick Acevedo, that the police had obtained a warrant to arrest Johnson for forgery of the checks drawn on the two accounts. The next day, Detective Jones and Officer Shepard went to the apartment of Johnson's mother, Connie Morashita, to arrest Johnson. It is unclear whether the parole officer was asked by Detective Jones to accompany him to the apartment, or whether the officer decided on his own initiative to do so. It is also unclear whether Mrs. Morashita gave her consent to the search. In any event, Jones and Shepard, without a search warrant, searched Mrs. Morashita's residence and found a check from the Four Square Church and identification belonging to Cary Montoya. They also found Johnson hiding behind a shower curtain and arrested him.

The State filed charges against Johnson both for burglary of the church and for forgeries of a church check and a check drawn on Cary Montoya's personal account. The trial court severed the burglary and forgery charges involving the church's check from the forgery charge relating to the check drawn on Montoya's account. The instant case concerns only the burglary and forgery charges involving the church's check.

Prior to trial, Johnson moved to suppress the items seized in the apartment by the parole officer on the ground that the parole officer acted as an agent of the police in conducting a warrantless search of the apartment in violation of his rights under the Fourth Amendment to the United States Constitution. The trial court denied the motion on the ground that a warrantless search by a parole officer of a parolee's residence "is not unlawful just because it is also beneficial to the police." *State v. Velasquez*, 672 P.2d 1254, 1262 (Utah 1983).

At trial, the store clerk who cashed the church check was unable to identify Johnson. However, the clerk from another store who had cashed the Montoya check testified over Johnson's objection, that Johnson had identified himself as Cary Montoya when cashing that check. Also, a police handwriting expert testified that he was ninety to ninety-five percent certain that both the church and Montoya checks had been signed by the same person.

## II. FOURTH AMENDMENT RIGHTS OF PAROLEES

Johnson contends that the search violated his Fourth Amendment rights against unreasonable searches and seizures and that it also violated the same rights of Mrs. Morashita, a nonparolee, because the search was performed over her objection.

### A. *Motion to Suppress and Failure to Object*

Johnson moved to suppress the checks at a pretrial hearing, but did not renew his objection when the checks were offered and admitted at trial. The prosecution argues that under *State v. Lesley*, 672 P.2d 79 (Utah 1983), Johnson waived his objection to the admissibility of the checks and, therefore, may not raise the issue on appeal.

In *Lesley*, the Court held, "[U]nder Rule 4 of the Utah Rules of Evidence, a specific objection is required even where a pretrial motion to suppress has been made." 672 P.2d at 82. The Court reasoned that even though a pretrial motion to suppress evidence had been made and denied, an objection to the admissibility of the evidence at trial should have been made because the trial judge was not the same judge who had ruled on the motion to suppress and there was no indication in the record that an evidentiary hearing on the motion had been conducted. However, the rule in *Lesley* does not require a defendant to object or to renew his motion to suppress at trial where the trial judge is also the judge who ruled on the pretrial motion and where the record or transcript indicates that an evidentiary hearing was held.

Since the trial judge in this case was also the judge who presided at the suppression hearing, the defendant's failure to object at trial did not constitute a waiver of his Fourth Amendment claim.

### B. *The Warrantless Search of the Defendant's Apartment*

■ *State v. Velasquez*, 672 P.2d 1254 (Utah 1983), defined a parolee's Fourth Amendment rights. It held that a parole officer may conduct a lawful search of a parolee's apartment without a search warrant if the parole officer has "reasonable grounds for investigating whether a parolee has violated the terms of his parole or committed a crime." *Id.* at 1260. It is necessary that a parole officer have an articulable "reasonable suspicion," which "requires no more than that the authority acting be able to point to specific and articulable facts that, taken together with rational inferences from those facts, reasonably warrant a belief in the conclusion mooted—in this instance, that a condition of parole has been or is being violated." *Id.* at 1260 n. 5 quoting *United States v. Scott*, 678 F.2d 32, 35 (5th Cir.1982). Thus, to constitute a valid warrantless search, there must be evidence (1) that the parole officer has a reasonable suspicion that the parolee has committed a parole violation or crime, and (2) that the search is reasonably related to the parole officer's duty. *Id.* at 1260.

■ In the instant case, Officer Shepard was aware that Johnson had committed a parole violation by pawning a stereo. But more significant is the fact that Shepard knew that a warrant had been issued based on probable cause that authorized the arrest of Johnson for the forgery of checks.

Those facts provided the basis for an articulable suspicion that Johnson had both committed a crime and violated the terms of his parole. In this case, it is of no consequence that Officer Shepard took no action to search Johnson's quarters until Detective Jones told Officer Shepard of the arrest warrant. Furthermore, Shepard told Mrs. Morashita that he was searching for stolen checks.

■ Johnson claims that the police used Officer Shepard to evade the necessity of obtaining a warrant. Although we have warned that police officers may not use parole officers simply as a means of avoiding the warrant requirements to conduct random searches,[1] that does not mean that police officers and parole officers are precluded from cooperating when the police have obtained an arrest warrant for the parolee. A parole officer has a legitimate parole interest to pursue in conducting a search when he becomes aware that an arrest warrant has issued for a parolee whom he supervises. In *Velasquez*, this Court stated that a parole officer's search of a parolee's premises "is not unlawful just because it is also beneficial to the police." *Id.* at 1262. That does not, however, sanction unlimited complicity between parole officers and police.[2]

The parole officer had a reasonable and articulable basis for conducting a parole search when he learned that probable cause existed to believe that Johnson had committed forgery. The parole search was supervised and conducted by the parole officer, not by Detective Jones. *See, e.g., United States ex rel Santos v. New York State Bd. of Parole*, 441 F.2d 1216, 1218 (2nd Cir.1971), *cert. denied*, 404 U.S. 1025, 92 S.Ct. 692, 30 L.Ed.2d 676 (1972) ("The

---

1. We reject the "new" California rule allowing virtually total complicity between parole officers and police. *See People v. Burgener*, 41 Cal.3d 505, 535, 714 P.2d 1251, 1271, 224 Cal. Rptr. 112, 132 (1986). This rule reduces a parolee's Fourth Amendment rights with respect to law enforcement officers and creates an unnecessary exception to the search warrant requirement.

2. A parole search is invalid if the parole officer acts merely as an agent or tool of the police.

*United States v. Gordon*, 540 F.2d 452, 453 (9th Cir.1976); *Latta v. Fitzharris*, 521 F.2d 246, 247 (9th Cir.), *cert. denied*, 423 U.S. 897, 96 S.Ct. 200, 46 L.Ed.2d 130 (1975); *United States v. Consuelo-Gonzalez*, 521 F.2d 259, 262 (9th Cir. 1975); *United States ex rel. Santos v. New York State Bd. of Parole*, 441 F.2d 1216, 1218 (2d Cir.1971), *cert. denied*, 404 U.S. 1025, 92 S.Ct. 692, 30 L.Ed.2d 676 (1972); *Smith v. Rhay*, 419 F.2d 160, 162 (9th Cir.1969); *People v. Candelaria*, 63 A.D.2d 85, 406 N.Y.S.2d 783 (1978).

mere fact that the police officer was the first to suspect that appellant was engaged in criminal activity and related this fact to the parole officer and was present at the subsequent investigation in no way alters the legality of the parole officer's presence.") The testimony of Jones and Shepard support the trial judge's finding that there was no evidence of bad faith on the part of the police and the parole officers. Consequently, there was nothing improper either in the decision to conduct the warrantless search or in the joint effort between Shepard and Jones.

## C. Search of Jointly Occupied Premises

Johnson also contends that because Mrs. Morashita did not consent to the search, a warrant should have been obtained because they lived together and she was not a parolee and therefore not subject to the lesser protection afforded parolees. This issue was specifically left open in *Velasquez*, 672 P.2d at 1260 n. 3.

It is well established that consent provides an exception to the general rule prohibiting warrantless searches. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *State v. Harris*, 671 P.2d 175, 179 (Utah 1983). W. LaFave, *Search and Seizure* § 8.1 (1987); In the instant case, the trial judge made no finding as to whether Mrs. Morashita consented to the search. We assume arguendo that no consent was given.

A warrantless search of a parolee may result in an invasion of privacy, at least to some extent, for those living with the parolee.[3] If the Fourth Amendment rights of nonparolees living with parolees were not reduced, a parolee could avoid all warrantless parole searches by living with a nonparolee and asserting the nonparolee's constitutional rights, and thus emasculate one

significant feature of the parole system. *Russi v. Superior Court*, 33 Cal.App.3d 160, 170, 108 Cal.Rptr. 716, 721 (1973); *People v. Kanos*, 14 Cal.App.3d 642, 652, 92 Cal.Rptr. 614, 619 (1971).

Nevertheless, parolees and their families retain some protection under the Fourth Amendment even though parolees have signed parole agreements expressly allowing warrantless searches. *Diaz v. Ward*, 437 F.Supp. 678, 686 (S.D.N.Y.1977). The degree to which those rights are diminished is determined by balancing the privacy interests of the parolee and those living with him or her against the legitimate parole objectives of easing the former law breaker into a productive life. *State v. Velasquez*, 672 P.2d at 1259. The California Supreme Court stated in *People v. Burgener*, 41 Cal.3d at 533–54, 714 P.2d at 1269, 224 Cal.Rptr. at 131: "A parole search must therefore be directly and closely related to parole supervision in order to avoid unreasonable invasion of the privacy interests of the parolee and those with whom he resides."

When a parolee lives with a nonparolee, courts generally hold that the cotenancy restricts, to some degree, the extent of a permissible consent search. The scope of consent impliedly given by a cotenant is limited to those parts of the premises where the tenants possess "common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). In *Matlock*, the Court stated:

The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, ... but rests rather on mutual use of the property by

---

**3.** *See United States v. Rabb*, 752 F.2d 1320 (9th Cir.1984); *United States v. Dally*, 606 F.2d 861 (9th Cir.1979); *Latta v. Fitzharris*, 521 F.2d 246 (9th Cir.) (en banc), *cert. denied*, 423 U.S. 897, 96 S.Ct. 200, 46 L.Ed.2d 130 (1975); *People v. Burgener*, 41 Cal.3d 505, 714 P.2d 1251, 224 Cal.Rptr. 112 (1986); *People v. Triche*, 148 Cal. App.2d 198, 306 P.2d 616 (1957); *People v. Icenogle*, 71 Cal.App.3d 576, 139 Cal.Rptr. 637 (1977); *Russi v. Superior Court*, 33 Cal.App.3d 160, 108 Cal.Rptr. 716 (1973); Annotation, *Admissibility of Evidence Discovered in Search of Defendant's Property or Residence Authorized by One, Other than Relative, Who is Cotenant or Common Resident with Defendant—State Cases*, 4 A.L.R.4th 1050, 1069–70 (1981). Annotation, *Validity, Under Fourth Amendment of Warrantless Search of Parolee or His Property by Parole Officer*, 32 A.L.R.Fed. 155, 190–91 (1977).

persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Id.* at 171 n. 7, 94 S.Ct. at 993 n. 7. Although the defendant in *Matlock* was not a parolee, the *Matlock* doctrine applies with equal force in parole cases. *See, e.g., State v. Tucker,* 118 Ariz. 76, 78, 574 P.2d 1295, 1297, *cert. denied,* 439 U.S. 846, 99 S.Ct. 144, 58 L.Ed.2d 147 (1978); *Silva v. State,* 344 So.2d 559, 562 (Fla.1977); *People v. Icenogle,* 71 Cal.App.3d 576, 586, 139 Cal. Rptr. 637, 642 (1977); Annotation, *Admissibility of Evidence Discovered in search of Defendant's Property or Residence Authorized by One, Other than Relative, Who is Cotenant or Common Resident with Defendant—State Cases,* 4 A.L.R.4th 1050, 1067 (1981).

█ It is not necessarily determinative that the nonparolee objects to the search. In *People v. Icenogle,* the court stated: "[E]ven if [the nonparolee] had expressly refused to consent to the officers' search of the apartment, the refusal to give consent ... would have been invalid." 71 Cal.App. 3d at 586, 139 Cal.Rptr. at 643. The necessity of preserving the parole system's integrity requires this result. *See also United States v. Dally,* 606 F.2d 861, 863 (9th Cir.1979); *Latta v. Fitzharris,* 521 F.2d 246, 250 (9th Cir.) (en banc), *cert. denied,* 423 U.S. 897, 96 S.Ct. 200, 46 L.Ed.2d 130 (1975).

█ Application of the above principles leads us to conclude that the search of a common area in Mrs. Morashita's residence was lawful. Although the trial court did not determine whether Mrs. Morashita actually consented to the search, consent was not required because the items confiscated were found in a hall closet, a common area,

and the search was terminated after they were discovered. The search did not extend into those parts of the residence that were under her sole control or possession and, therefore, did not unlawfully invade her right of privacy. Since the search was pursuant to a legitimate concern that the defendant had violated his parole and was based on a reasonable articulable suspicion, the search was lawful.

## III. ADMISSIBILITY OF EVIDENCE OF OTHER CRIMES

The charges relating to the stolen church checks were severed from the charges relating to the forgery of Cary Montoya's personal checks. Since the Macey's clerk was only "70% certain" that the defendant was the man who used the name of Cary Montoya to cash the check drawn on the Four Square Church account and was unable to identify the defendant at a police lineup, the State called Nora Welch, a Stimson's clerk to testify that she was positive that Johnson had presented himself at Stimson's as Cary Montoya and cashed a check on Montoya's account. She also identified Johnson at a police lineup. The trial court allowed her testimony on the ground that the issue of the defendant's identity was in dispute, and her testimony, even though of another crime, was highly probative since other identity evidence was somewhat uncertain. The evidence was held admissible under the identity exception to the rule against admitting evidence of other crimes against a defendant. *See* Utah R.Evid. 404(b).[4]

█ The essence of Rule 404(b) is the same as old Utah R.Evid. 55. Evidence of other crimes is admissible when the probative value of the evidence as to one of the elements of an offense and the need for the evidence to prove a specific issue outweigh the potential for prejudicing the factfinder's consideration of the merits of the crime charged. *State v. Forsyth,* 641 P.2d 1172, 1175 n. 5 (Utah 1982).

---

4. Rule 404(b) provides:
   *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.

It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

*State v. Tanner,* 675 P.2d 539, 547 (Utah 1983), emphasized the need to avoid unfair prejudice against the accused by the admission of evidence of other crimes:

> [T]he judge must weigh not only the probative value of the evidence but also the *need* for the evidence and the *necessity* for a "full inquiry into the facts relating to the issues" against the potential for undue prejudice to the defendant. *State v. Lopez,* 22 Utah 2d 257, 262, 451 P.2d 772, 775 (1969).... However, we emphasize that the "reception of such evidence is justified by necessity and, if other evidence has substantially established the element of the crime involved (motive, intent, identity, absence of mistake, etc.), the probative value of showing another offense is diminished, and the trial court should rule it inadmissible even though relevant." *Tucker v. State,* 82 Nev. 127, 412 P.2d 970, 971 (1966).

In a long line of cases, this Court has repeatedly held that evidence of other crimes may not be admitted to prove that the defendant has a bad character or a disposition to commit the crime charged. *See, e.g., State v. McCumber,* 622 P.2d 353, 356 (Utah 1980), *State v. Gibson,* 565 P.2d 783 (Utah 1977). To give meaning to the policy embodied in Rule 404(b), evidence of other crimes must be reasonably necessary and highly probative of a material issue.

■ Johnson's identity was the subject of problematic evidence. Ms. Welch's testimony was directly probative on the issue of identity and was indirectly probative on the identity issue because it indicated that a common scheme was employed by the perpetrator of the crimes in using the same name on the forged checks, both of which were cashed the same day. On these facts, we hold that the probative value of the other-crimes evidence was properly admitted. *See State v. McHenry,* 7 Utah 2d 289, 323 P.2d 710, 711 (1958). *See also State v. Brown,* 125 Ariz. 160, 161, 608 P.2d 299, 300 (1980); *People v. Casper,* 641 P.2d 274, 275 (Colo.1982); *State v. Thompson,* 107 Idaho 666, 667, 691 P.2d 1281, 1282 (1984).

■ The defendant also argues that the evidence should have been disallowed because the charges had been severed and because the purpose of the severance was to avoid prejudicing the defendant with evidence of another crime. Although it is true that the policies embodied in the rule excluding evidence of other crimes to show bad character are similar to the policies of the rule requiring the severance of unrelated charges, the severance of two crimes for trial does not necessarily preclude the admission of evidence of the severed crime in the trial of the other. However, we recognize that admission of evidence of other crimes creates such a great likelihood of prejudice, irrespective of whether there has been a severance, that the defendant is entitled upon request to an instruction that the evidence may be considered only for the limited purpose for which it is specifically offered. No such request was made in this case. *State v. Cowan,* 26 Utah 2d 410, 490 P.2d 890 (1971).

## IV. INSTRUCTION ON THEFT

■ Finally, the defendant contends that the trial judge erred in giving a jury instruction that imposed a mandatory rebuttal presumption that a person in possession of recently stolen property was the person who stole it. Contrary to the State's assertion, the defendant made a proper objection. A proper objection need not cite a case; it need only fairly apprise the trial judge of the essence of the objection.

■ The instruction in this case was erroneous under *State v. Chambers,* 709 P.2d 321 (Utah 1985), and *State v. Pacheco,* 712 P.2d 192 (Utah 1985), insofar as it recited the statute, even though the explanatory portion of the instruction made clear that the jury might *infer* theft from the possession of recently stolen property, but was not required to do so.

■ On the facts of this case, we hold that the error was harmless because the jury was told that it was only entitled to make an inference of theft, but it was not required to do so. *See State v. Smith,* 726 P.2d 1232 (Utah 1986), where we held that

a somewhat similar instruction was harmless error. Furthermore, the property stolen was not fungible property which defendant might have legitimately possessed. Rather, the checks were identified as property belonging to others were shown to have been forged and would not legitimately have been in his possession under any circumstances.

Affirmed.

HALL, C.J., concurs.

DURHAM, Justice (concurring separately):

I concur in the majority opinion, but write separately to emphasize the obligation of defense counsel to notify judges who have ruled on pretrial suppression issues that defendants' objections to challenged evidence are reserved and not withdrawn, thus alerting those judges to the possibility that trial evidence may affect the validity of earlier rulings. I agree that in this case there was an extensive hearing on defendant's motion to suppress, and it is quite clear from the record that defense counsel did not intend to waive any related evidentiary objections at trial. In fact, several ambiguous references during trial to a "prior motion" may have referred to defendant's pretrial motion to suppress. It is important, however, that trial judges be given the opportunity to review pretrial suppression rulings when and if there is any likelihood that they were erroneous. When the pretrial judge is also the trial judge, unlike the circumstance in *State v. Lesley*, 672 P.2d 79, 82 (Utah 1983), this is easily accomplished by indicating on the record, either at the end of the pretrial hearing or at the trial outside the presence of the jury, that there is a continuing objection to the evidence challenged in the motion to suppress.

HOWE, and ZIMMERMAN, JJ., concur in the concurring opinion of DURHAM, J.