## STATE v. ANDERTON.

No. 5334.   Decided January 16, 1933.   (17 P. [2d] 917.)

*J. Vernon Erickson,* of Richfield, for appellant.

*Joseph Chez,* Atty. Gen., and *L. A. Miner,* Sp. Deputy Atty. Gen., for the State.

FOLLAND, J.

Defendant was convicted of the crime of grand larceny, the stealing of five sheep the property of Binning Goold, and appeals.  The errors assigned are that the verdict is erroneous, that the trial court erred in refusing to direct

a verdict of not guilty and in refusing to grant defendant's motion for a new trial, all on the ground of insufficiency of the evidence, and error also is assigned to the admission of testimony of the changing of brands on sheep belonging to other parties.

The evidence discloses that during the spring and summer of 1931, John Sallalis was running in the vicinity of Brimhall Springs, Sevier county, Utah, what is referred to as a Co-op herd of sheep; that is, the sheep belonging to fifteen or twenty different owners. In that herd the defendant had placed 360 sheep and 230 lambs. In the same herd Binning Goold had 34 Merino sheep which were marked with two slits in the right ear, an aluminum tag in the left ear, and were branded S. G. with a bar over it. Early in October of 1931, Sallalis missed a number of sheep from the herd. On about October 24th the Co-op herd was separated and the remaining sheep returned to their owners. Defendant received his lambs in September, and about the 24th of October received 200 of his sheep, which he thereupon turned over to the Monroe State Bank in partial satisfaction of a mortgage. At the breaking up of the herd Goold received only 15 of his sheep. On or about the 17th of October, 1931, at dusk, that is, between sundown and dark of that day, Niel Wilson and Truman Wilson were driving a herd of sheep belonging to their brother John B. Wilson just south of the town of Elsinore. This herd was being driven to the desert for wintering. The defendant had a small bunch of sheep numbering 147 which at that time and place were ahead of the Wilson herd and which defendant "pushed" or drove into and commingled with the Wilson herd. Niel and Truman Wilson had some conversation with defendant at that time with reference to whether he had arranged to put his sheep into the herd. Niel Wilson testified that Truman asked the defendant if he had seen John and that defendant answered, "Yes, John had given him no answer on the sheep." There was no corral in the vicinity, so the sheep were not separated, but the entire commingled herd was

driven toward the desert. On or about the 26th of October John Sallalis, and Sheriff Fairbanks of Sevier county, went to Antelope Point, where the Wilson herd was then located. There they discovered a number of sheep that had been freshly marked by slitting and cutting of the ears and branded over the old brands with the defendant Anderton's brand. The sheriff testified that the ears of the sheep were pretty badly cut and with a fresh slit in the left ear. The marking and mutilation of the ears had, in the opinion of the sheriff, been done about ten days previously. The ears were sore and the blood was still on the wool around the ears. One hundred and forty sheep were cut out of the Wilson herd and taken back to the sheriff's corral at Richfield. These sheep were branded with Anderton's brand, many of them branded over other brands, and many of the sheep had ears slit and mutilated. Niel and Truman Wilson testified it was too dark to observe the condition of the sheep which Anderton pushed into their herd on the night that he did it, but on the next morning they looked at the sheep and observed the fresh branding and marking, which they described. Niel Wilson testified that the sheep cut out and taken back by the sheriff were the sheep "pushed" into the herd by the defendant. Among the sheep brought back and placed in the sheriff's corral were 10 identified by Binning Goold as belonging to him. The sheriff testified that there were some sheep there of a Mr. Henrie and some of a Mr. Parker and others, all of which had been freshly branded and marked. Various persons came and claimed the sheep, and upon identification they were turned over to Sallalis and the owners. There was testimony to the effect that the defendant said he had marked and branded the 147 sheep, which he claimed to own, to distinguish them from his sheep which were mortgaged to the bank and which had been in the Sallalis herd. The marks and brands, however, on both bunches of sheep were the same. The defendant testified in his own behalf that the 147 sheep were his own; that in the spring the bunch numbered 175 but had

simmered down to 147 by winter, and that he had kept them at home during the summer, fed them in the fields, and ranged them in the foot hills at Elsinore; that he had marked and branded them with his own brands over the marks and brands of others and had placed them in the Wilson herd to be taken to the desert. On cross-examination he testified he had bought sheep in 1930 and 1931 from several parties in bunches of from 20 to 1,000 and disposed of all but the small bunch he had left. He named some of the persons from whom he claimed he had purchased sheep but said he had not bought any from Binning Goold, and failed to say from whom he had bought the particular sheep which bore the Goold marks and brands and were claimed by Goold. Defendant also testified that he had called John Wilson on the phone and asked permission to send his 147 sheep out on the desert with the Wilson herd, but that Wilson said he had a large enough herd as he already had 3,900 sheep and did not care to handle more; "so I says to him over the telephone, I says, 'What would you say if I turned these sheep in the corral out there and they got accidentally in your herd?' He kind of laughed and didn't say anything."

The first assignment is the alleged error of the court in admitting evidence to the effect that in the bunch of 140 sheep recovered from the Wilson herd were some belonging to Mr. Parker and Mr. Henrie on which the marks and brands had been changed. The objection urged is that, when one is charged with a particular larceny, evidence to prove he had committed another and distinct offense is incompetent and prejudicial under the general rule to that effect as stated in 8 R. C. L. 198. The sheep of Henrie and Parker were with the Goold sheep in the bunch of 140 recovered from the Wilson herd, all of which had been marked and branded by the defendant, and were among the sheep missing from the Sallalis herd. The testimony referred to the details of one general transaction. This testimony was rightly admitted under the exception to the general rule stated as follows in 8 R. C. L. 199:

"The rule against admitting proof of extraneous crimes is subject, however, to certain qualifications or exceptions. In making proof against a defendant it is competent for the prosecution to put in evidence all relevant facts and circumstances which tend to establish any of the constitutive elements of the crime of which the defendant is accused in the case on trial, even though such facts and circumstances tend to prove that the defendant has committed other crimes. So evidence covering the commission of other offenses is admissible when two or more crimes are so linked together in point of time or circumstances that one cannot be fully shown without proving the other. Thus for the purpose of proving a defendant guilty of the larceny of one article it is proper to prove that he stole other articles on the same expedition, but it is not proper to prove that he stole on an independent expedition." See, also, 16 C. J. 603, and *State* v. *Bowen*, 43 Utah 111, 134 P. 623.

The other assignments that the verdict is contrary to law, that the court erred in refusing to direct a verdict of not guilty and in refusing to grant a motion for a new trial, all rest on the same grounds, the alleged insufficiency of the evidence to support the verdict and may be discussed together. It is contended there is "no evidence to connect the defendant with the original taking of the property alleged to have been stolen and the evidence is therefore insufficient to show the taking." It is true there is no direct evidence by any one who claims to have seen the defendant take the Goold sheep from the Co-op herd. Proof of the original taking rests on the facts and circumstances shown in the evidence. The evidence shows that the 5 sheep which were alleged to have been stolen were among those missing from the Co-op herd, that within a few days thereafter they were in defendant's possession, that he marked and branded them with his own over the marks and brands previously on the sheep, and that he had "pushed" them into the Wilson herd at dusk on either the 17th or 18th of October. A jury might well conclude that his explanation of why he branded the sheep in the manner he did was neither probable nor satisfactory, and his testimony that the bunch of 147 which he crowded into the Wilson

herd had been in his possession all summer is contrary to the other evidence in the case.

It is also contended there is no evidence of a felonious intent or a felonious taking, carrying, or driving away of the sheep. The argument seems to be that the evidence fails to show a felonious intent at the time the sheep were originally taken by defendant. Proof of intent also rests on circumstantial evidence. The testimony that the sheep were found a few days after being missed from the Sallalis herd in possession of defendant, and that he had mutilated the marks and made new cuttings of the ears and placed his own mark on them and had also branded them over the brands of Goold, and then forced them into the Wilson herd for the purpose of having them taken away from that locality to the desert for the winter, is sufficient to support a finding by the jury of an unlawful or felonious intent to steal the sheep and deprive the owner permanently thereof. This issue was presented to the jury by the instructions of the trial judge wherein he directed the jury "that the taking of the property alleged to have been stolen must have been accompanied with a felonious intent to steal the same and such intent must have existed at the time of the taking of the property." We are satisfied the jury was justified in concluding that the sheep were taken with a felonious intent and that the evidence is sufficient to support the verdict.

Finding no error in the record, the judgment of conviction is affirmed.

STRAUP, C. J., and ELIAS HANSEN, EPHRAIM HANSON and MOFFAT, JJ., concur.