Raymond D. Behle, St. George, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

**STATE of Utah, Plaintiff and Respondent,**

v.

**Martley Leroy HOLDER, Defendant and Appellant.**

No. 18524.

Supreme Court of Utah.

Nov. 27, 1984.

PER CURIAM:

Defendant Martley Leroy Holder appeals his jury conviction in the Fifth Judicial District in Washington County of theft of an operable motor vehicle. The sole question on appeal concerns the admissibility of evidence of another crime. We reverse.

Sometime between the close of business on the evening of July 16, 1981 and the

following morning, a red Lincoln Mark VI and a red Chevrolet Luv pickup truck were stolen from Zion's Chrysler-Plymouth car dealership in St. George.

The next day, at about 10:20 a.m., a Nevada highway patrolman, who had been alerted to be on the lookout for the red Lincoln, sighted two men driving the car south toward the California border. The patrolman followed the Lincoln and put on his patrol car's emergency lights as the Lincoln entered an off-ramp. The Lincoln stopped shortly thereafter in Jean, Nevada. A Mr. Perez was driving; Holder was in the passenger seat. The patrolman arrested them. During a subsequent search, a folding knife with a blade between three and six and one-half inches long was found in Holder's right front pocket. A loaded Strohm-Roger .22 automatic pistol was found under the right front seat, where Holder had been sitting.

We now come to the evidence whose admission as part of the prosecution's case in chief was objected to. At approximately 10:00 a.m. on the morning of July 17, Perez and Holder were sitting in the stolen Lincoln, which was parked next to another car in a Thriftimart parking lot in Las Vegas, Nevada. Perez was in the driver's seat; Holder was in the passenger seat. As Bobby Joe Childers was entering the adjacent car, Perez pointed a pistol at him and told him to get into the back seat of the Lincoln. Perez asked Childers for all his money. Childers gave Perez five $20 bills. Holder remained silent throughout the whole incident.

Next, Perez, Holder and Childers drove down the street to a gas station. Perez gave Holder one $20 bill and told him to pay for and pump some gas. Holder left the car, entered the service station office to pay for the gas, and returned to the car to pump the gas. The three then drove to the freeway entrance, where Perez pulled over and released Childers. Childers called the police.

Holder's defense attorney filed a motion in limine requesting the trial court to prohibit the admission of any evidence concerning the robbery of Childers or the fact of Holder's arrest for robbery in Nevada. The trial court denied the motion. We must decide whether the evidence of Holder's participation in the crime in Nevada was properly introduced to prove his theft of the automobile in Utah.

Excluding the objected to evidence, the prosecution's case in chief showed that two cars had been stolen in St. George and that Perez and Holder were in possession of one of the stolen cars the next day. This evidence alone, without any explanation by the defendant of the circumstances surrounding the possession of the stolen property, U.C.A., 1953, § 76–6–402(1) (1978), would have been sufficient evidence upon which a jury could have chosen to convict Holder.

The inclusion of evidence of the robbery of Childers twenty minutes before Holder and Perez were arrested by the highway patrolman was relevant to show possession of the stolen car and cooperation in that possession between Perez and Holder. Yet this evidence was only cumulative on that issue. Possession had been shown already by the testimony of the arresting highway patrolman. Cooperation, or at least leadership in control of the vehicle by Holder, could be inferred from Holder's possession of two weapons upon his arrest.

The merely cumulative character of the robbery evidence on the element of knowledge and intent regarding the theft charge is significant because it highlights the limited value this evidence has when weighed against the substantial possibility that a jury would be prejudiced by evidence of Holder's commission of another crime. Such evidence of the commission of other crimes must be used with extreme caution because of the prejudicial effect it may have on the finder of fact. *See State v. Kappas,* 100 Utah 274, 278, 114 P.2d 205, 207 (1941); *State v. Anderton,* 81 Utah 320, 323–24, 17 P.2d 917, 918 (1933); *State v. McGowan,* 66 Utah 223, 226–28, 241 P. 314, 315–16 (1925).

Rule 45 of the Utah Rules of Evidence provides,

> [T]he judge may in his discretion exclude evidence if he finds that its probative value is substantially outweighed by the risk that its admission will (a) necessitate undue consumption of time, or (b) create substantial danger of undue prejudice or of confusing the issues or of misleading the jury, or (c) unfairly and harmfully surprise a party who has not had reasonable opportunity to anticipate that such evidence would be offered.

Utah R.Evid. 45, 9B U.C.A., 1953 (1977).

▇ In light of the marginal probative value of the robbery evidence and of the generally recognized danger that jurors hearing evidence of a defendant's commission of another crime will be unduly prejudiced against him, we hold that the trial judge abused his discretion under Rule 45 of the Utah Rules of Evidence.

In taking a contrary view, the dissent ignores what is a critical distinction between the proper elements of the prosecution's case in chief and evidence used to rebut a defendant's explanation of the evidence. Concededly, the evidence objected to here would have been relevant and admissible in response to "Holder's explanation of the circumstances which led to his arrest, which if believed, would absolve him of guilt," as the dissent describes it. However, Holder had not yet given his explanation when the evidence in question was introduced and, in fact, might not have chosen to testify at all had the State's prejudicial evidence not already been erroneously admitted. See *State v. Brown,* Utah, 577 P.2d 135, 136 (1978), where evidence of a prior and unrelated yet similar crime was allowed as rebuttal evidence to establish the defendant's knowledge and intent. In *Brown,* the evidence was held to be relevant to rebut issues raised by the defendant. This is not the case here. Had the prosecution not adduced evidence of the Nevada robbery in its case in chief, Holder might have elected not to testify, or he might have chosen to limit his testimony so as not to put into issue the facts that the dissent claims the objected to evidence was necessary to rebut. Until after Holder had produced his version of the facts, the highly prejudicial effect this evidence would have on a jury far outweighed any other purpose it could have. And the fact that it cannot be determined whether Holder would have testified had this evidence not been part of the case in chief means that this error cannot be said to have been harmless or that the trial judge did not abuse his discretion, as the dissent argues.

The judgment is reversed, and the case is remanded for a new trial.

STEWART, J., concurs in the result.

HALL, Chief Justice (dissenting):

I do not join the opinion of the Court because it misapplies the provisions of Rules 45 and 55, Utah Rules of Evidence,[1] to the facts of this case.

Rule 55, Utah Rules of Evidence, provides as follows:

> Subject to Rule 47 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his disposition to commit crime or civil wrong as the basis for an inference that he committed another crime or civil wrong on another specified occasion but, subject to Rules 45 and 48, such evidence is admissible when relevant to prove some other material fact including absence of mistake or accident, motive, opportunity, intent, preparation, plan, knowledge or identity.

In *State v. Forsyth,* Utah, 641 P.2d 1172, 1175 (1982), we said that "[u]nless Rules 45 or 48 dictate or permit a contrary result, the admissibility of evidence that a defendant committed some other crime ... turns on whether that evidence is 'relevant to prove some ... material fact' in the crime ... on trial." We there expressly reaf-

---

**1.** In effect at the time of this incident, but since superceded by Utah Rules of Evidence adopted

September 1, 1983.

firmed the rule that evidence of other crimes committed by a defendant "is admissible if, and only if, it is relevant to prove some fact that is material to the crime charged." *Id.* at 1176.

Rule 48 of the Utah Rules of Evidence is not applicable to these facts. Rule 45 of the Utah Rules of Evidence provides that:

[T]he judge may in his discretion exclude evidence if he finds that its probative value is substantially outweighed by the risk that its admission will (a) necessitate undue consumption of time, or (b) create substantial danger of undue prejudice or of confusing the issues or of misleading the jury, or (c) unfairly and harmfully surprise a party who has not had reasonable opportunity to anticipate that such evidence would be offered.

In the instant case, the Court concluded that Holder was in possession of the red Lincoln at the time of his arrest and that such evidence, standing alone, without further explanation, was sufficient to support a conviction of theft. As a consequence, the Court further concluded that introduction of the evidence of the Las Vegas robbery was only cumulative on the issue of possession of the stolen Lincoln, and that it was therefore unduly prejudicial to the jury. However, the conclusions drawn by the Court fail to take into account pertinent facts of the case which bear upon Holder's explanation of the circumstances which led to his arrest, which if believed, would absolve him of guilt. Those facts are recounted from the record as follows.

Martley Leroy Holder left New York on or about July 10, 1981, to hitchhike to California, where he was to attend college. In New Jersey, Holder accepted a ride from a Mr. Perez, who was driving a gray Pontiac Astre and who told Holder he was going to Los Angeles. On the evening of July 16, 1981, about six days after the two met, Perez and Holder arrived in St. George, Utah. Holder testified that the gray Pontiac Astre was performing sluggishly; it "took a long time to move when you wanted to move."

Sometime between the close of business on the evening of July 16, 1981, and the following morning, a red Lincoln Mark VI and a red Chevrolet Luv pickup truck were stolen from Zion's Chrysler-Plymouth car dealership in St. George.

As to what happened that evening in St. George, Holder testified as follows. Upon their arrival, Perez decided he would spend a few days at the Hilton Inn. Holder determined to continue on to Los Angeles. The two parted in the Hilton Inn parking lot, and Holder walked about one mile to the highway with three backpacks and one dufflebag. After Holder tried unsuccessfully for an hour to hitch a ride, Perez arrived in the stolen Lincoln and offered him a ride. Then, for the first time, Holder saw a gun, which was lying on the front seat of the car. As he "didn't want to be a hero," Holder entered the car. Holder further testified that after the two of them pulled into a Las Vegas truck stop later that evening, Perez robbed him at gunpoint. When Holder later tried to leave the car, Perez ordered an Irish setter, which had been accompanying them, to attack him.

The admission of the following evidence was objected to. At approximately 10:00 a.m. on the morning of July 17, Perez and Holder were sitting in the stolen Lincoln, which was parked next to another car in a Thriftimart parking lot in Las Vegas, Nevada. Perez was in the driver's seat; Holder was in the passenger seat. As Bobby Joe Childers was entering an adjacent car, Perez pointed a pistol at him and told him to get into the back seat of the Lincoln. Perez asked Childers for all his money. Childers gave Perez five $20 bills. Holder remained silent throughout the whole incident.

Next, Perez, Holder and Childers drove down the street to a gas station. Perez gave Holder one $20 bill and told him to pay for and pump some gas. Holder left the car, entered the service station office to pay for the gas, and returned to the car to pump the gas. He made no attempt to escape at the station. The three then

drove to the entrance to the freeway, where Perez pulled over and released Childers. Childers called the police.

Shortly thereafter, at about 10:20 a.m., a Nevada highway patrolman, who had been alerted to be on the lookout for the red Lincoln, sighted Perez and Holder driving south toward the California border. The patrolman followed the Lincoln and put on his emergency lights as the Lincoln entered an off-ramp. The Lincoln stopped shortly thereafter in Jean, Nevada. Perez was driving; Holder was in the passenger seat. The patrolman arrested them. During the subsequent search, a folding knife with a blade between three and six and one-half inches long was found in Holder's right front pocket. A loaded Strohm-Roger .22 automatic pistol was found under the right seat in which Holder had been sitting. The only money found was $80 held by Perez, which presumably consisted of the four stolen $20 bills remaining after the gas purchase in Las Vegas.

The admissibility of the evidence turns on whether it is relevant to prove some material fact of the crime charged. Perez and Holder were both traveling to the same destination. A reasonable inference which could be drawn from the evidence was that the Lincoln was stolen to replace the ailing Pontiac and that Childers was robbed to obtain gas money; thus both crimes were committed for the purpose of continuing the journey to Los Angeles. Holder's willing participation in the robbery of Childers, as evidenced by his failure to escape at the gas station and his possession of a weapon upon his arrest, was relevant to affirm that he was both the constant companion and the constant accomplice of Perez as the two drove across the country, financing their journey by illegal means. This evidence of steadfast cooperation in pursuit of the same goal, cooperation that extended even to the commission of felonies, was further relevant to help establish both the identity and the intent of Holder in the theft of the Lincoln. Therefore, the evidence also falls within the specific categories illustrated by the language of Rule 55.

It is thus to be seen that the evidence was in fact of probative value and therefore admissible as part of the State's case in chief, and not "merely cumulative" as characterized by the majority opinion. Accordingly, there was no abuse of discretion on the part of the trial judge in denying the motion in limine to exclude the objected to evidence in this case under Rule 45.

I would affirm.